[No. 2084.  Decided March 5, 1896.]

A. L. DAVIS, *Appellant*, v. LANE C. GILLIAM *et al.*, *Respondents*.

INSTRUCTIONS — HARMLESS ERROR.

A judgment will not be reversed because of error in giving or refusing instructions, when the verdict rendered is manifestly in accordance with the evidence.

Appeal from Superior Court, Spokane County.— Hon. T. J. HUMES, Judge.  Affirmed.

*Graves & Wolf*, for appellant.

*Cyrus Happy*, for respondents.

The opinion of the court was delivered by

GORDON, J.—The complaint in this action alleges that on the 1st day of July, 1890, the appellant (plaintiff below) was the owner of about 800 head of horses then on what is known as the Crab Creek Range in the counties of Adams and Douglas, that on that day he entered into a contract with the respondents wherein and whereby he agreed to sell and deliver said horses to them at the rate of $30 per head, the delivery of the horses to be made at the fall round-up of that year. Four thousand dollars of the purchase price was to be paid at the time of making the contract and the balance in one, two, three, four and five years. The first payment was made by promissory note in the sum of $4,000, dated July 1, 1890, payable one year thereafter. The complaint also alleges that on or about the 1st of September, 1890, the fall round-up being about to take place, appellant notified the respondents that he was ready to deliver the horses and requested them to attend at the range for the purpose of receiving them as counted, and that at that time he was ready to deliver the same and proceed with the contract, but that the respondents neglected and refused to receive or accept the horses, or proceed any further with the contract, that at the time of the occurrence of the breach, the band of horses were not worth to exceed $10,000 in value. The respondents answered, denying the several allegations of the complaint, and alleging affirmatively that they were induced to enter into an agreement whereby the appellant agreed to deliver 800 horses of a certain kind and description to respondents on the 1st

day of September, 1890, for which horses they agreed to pay $30 per head, that on the 1st day of September thereafter they were ready and willing to receive and accept the horses in accordance with the terms of their contract of purchase and for that purpose attended at the range where said horses were located, but that the appellant did not at that time deliver or offer to deliver said horses or any of them, and further that the representations of the appellant as to the description and kind of horses which he pretended to own and to be able to sell and deliver to respondents were false and fraudulent, etc. The trial resulted in a verdict for the respondents, and from an order denying his motion for a new trial, and from judgment upon the verdict, the plaintiff has appealed.

The sole ground relied upon for a reversal is that the court erred in its charge to the jury and in refusing to give particular instructions requested by the appellant. The respondents, while not conceding that any error was committed by the trial court either in giving the instructions complained of or in refusing to give others as requested by appellant, insist that the verdict is right under the evidence and that the appellant failed to show any offer or readiness to deliver the horses in pursuance of the agreement, and further, that it affirmatively appeared from the testimony that he was not in possession of the horses either at the time of the contract or at the time provided therein for a delivery of the horses, nor until nearly a year thereafter.

"It is the practice of most of the courts, before passing upon exceptions to instructions, to look into the evidence and see if the verdict was right, and, if it is found to be so, the court will look no further." Sec. 2402, Thompson on Trials, and authorities there cited.

After a careful examination of the entire record, we have reached the conclusion that this contention of respondents must be upheld. While detached portions might be construed otherwise, still, when considered as a whole, the testimony clearly and unmistakably shows that the appellant was never in a position to carry out his contract by delivering the horses prior to July, 1891, and that in the meantime about 100 of the band had been shipped out of the state and disposed of. Appellant's own testimony shows that at the time of entering into the contract, the horses were in the possession of one Glasspoole, who claimed an interest in them, that one of the respondents at appellant's request accompanied appellant to the range where the horses in question were located, at or about the time of the round-up, but that appellant was unable to deliver any of the horses to respondents at that time because of the refusal of Glasspoole to surrender possession of them, that thereupon they returned to the city of Spokane, distant some seventy-five miles from the range, where, on the 27th day of August, 1890, the appellant entered into a written contract with Glasspoole, a copy of which contract was attached to the deposition of Glasspoole and put in evidence by appellant. This contract recited that the property, to-wit:

"A certain band of horses supposed to contain about 800 head   .   .   .   now on the Crab Creek Range, etc., are part of the same band and its increase *bought by the first and second parties* [Glasspoole being party of the first part and appellant party of the second part to said contract] and John Davis from J. L. Dow, etc."

In said contract said Glasspoole agreed to sell his interest in and to said property to the appellant in consideration of the appellant delivering to Glass-

poole respondents' note for $4,000, and a bond of appellant with sufficient sureties to insure the prompt payment to said Glasspoole of said note at maturity. This contract also provided that Glasspoole should remain in possession of the horses until their exact number should be ascertained by counting, etc., and until payment was made as therein provided. It further appears from the testimony of appellant that the $4,000 note (executed by respondents) which, under the terms of the contract with Glasspoole appellant was required to deliver to Glasspoole before he could obtain possession of the horses, was at that time held by the First National Bank of Walla Walla, where appellant had theretofore pledged it as collateral to his own note for something over $3,000, and it further appears that up to the time of the trial, he had not procured the return of said $4,000 note, and that Glasspoole continued in the possession of all of the horses until July, 1891, in the meantime shipping about 100 of the horses out of the state to the State of Illinois, where they were sold. Such was the case made by the appellant. It seems plain that to entitle the appellant to a recovery, the testimony should have shown an ability upon his part to deliver the horses in question in accordance with the terms of the contract. The undisputed proof as we think, however, shows that he was wholly unable to make a delivery because of the interest which Glasspoole owned in the horses, coupled with his refusal to surrender possession of them. It follows that if any error was committed in the charge of the court, it was wholly immaterial.

It is a familiar rule that a good verdict cures all errors and irregularities in the proceedings, and that errors growing out of a charge are always to be disre-

garded when "the verdict is so plainly in accordance with the evidence that it follows as a mere conclusion of law thereon." Thompson on Trials, § 2403.

It appearing to us from a consideration of the entire record that substantial justice has been done, the judgment appealed from will be affirmed.

ANDERS and SCOTT, JJ., concur.