[No. 7608.   Decided July 20, 1909.]

C. W. ARIS, *Respondent,* v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Appellant.*[1]

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. Error in giving or refusing instructions is harmless where, under the evidence, no other verdict could have been rightfully given or allowed to stand and the prevailing party was entitled to judgment notwithstanding a contrary verdict, and the verdict rendered follows as a conclusion of law from the evidence.

INSURANCE—POLICY—APPLICATION—FALSE ANSWERS — OCCASIONAL USE OF LIQUORS. Answers in an application for life insurance that the insured had no daily habit of driking, that he drank occasionally, that he drank whiskey, and had always been in the habit of taking an occasional drink, are not shown to have been wilfully and intentionally false, so as to avoid liability on the policy, by evidence that at intervals he drank to excess and became intoxicated; there having been no representations made as to that point, although the medical examiner was instructed to make special investigation as to the occasional use of intoxicants.

Appeal from a judgment of the superior court for Spokane county, Poindexter, J., entered March 21, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action upon a policy of life insurance, after a trial on the merits. Affirmed.

*Hughes, McMicken, Dovell & Ramsey,* for appellant, contended, *inter alia,* that the representations as to drinking intoxicants were very material. *Provident Sav. Life Assur. Co. v. Dees,* 120 Ky. 285, 86 S. W. 522; *Mutual Life Ins. Co. v. Mullan,* 107 Md. 457, 69 Atl. 385; *Mutual Life Ins.*

[1]Reported in 103 Pac. 50.

*Co. v. Thomson*, 94 Ky. 253, 22 S. W. 87 ; *Brignac v. Pacific Mut. Life Ins. Co.*, 112 La. 574, 36 South. 595, 66 L. R. A. 322. The representations were warranties and rendered the policy void. *Dimick v. Metropolitan Life Ins. Co.*, 69 N. J. L. 384, 55 Atl. 291, 62 L. R. A. 774 ; *Owen v. Metropolitan Life Ins. Co.*, 74 N. J. L. 770, 67 Atl. 25, 122 Am. St. 413 ; *Davey v. Aetna Life Ins. Co.*, 20 Fed. 482 ; *Brignac v. Pacific Mut. Life Ins. Co.*, *supra; Connecticut Mut. Life Ins. Co. v. Young*, 77 Ill. App. 440 ; *Fidelity Mut. Life Ins. Co. v. Beck*, 84 Ark. 57, 104 S. W. 533, 1102 ; *Prudential Ins. Co. v. Hummer*, 36 Colo. 208, 84 Pac. 61 ; *Metropolitan Ins. Co. v. Rutherford*, 98 Va. 195, 35 S. E. 361 ; *American Credit Indemnity Co. v. Carrollton Furniture Mfg. Co.*, 95 Fed. 111 ; *Union Cent. Life Ins. Co. v. Lee*, 20 Ky. Law 839, 47 S. W. 614.

*Kenyon & Setters*, for respondent, contended, among other things, that the answers were full and complete so far as they went, and the appellant should have exacted a fuller or more precise answer, if desired. *Billings v. Metropolitan Life Ins. Co.*, 70 Vt. 477, 41 Atl. 516 ; *Liberty Hall Ass'n v. Housatonic Mut. Fire Ins. Co.*, 7 Gray 261 ; *Fitch v. American Popular Life Ins. Co.*, 59 N. Y. 557, 17 Am. St. 372 ; *Phoenix Life Ins. Co. v. Raddin*, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644 ; *Edington v. Mutual Life Ins. Co.*, 67 N. Y. 185 ; *Loud v. Citizens' Mut. Ins. Co.*, 2 Gray 221 ; *Campbell v. New England Mut. Life Ins. Co.*, 98 Mass. 381.

CROW, J.—Action by C. W. Aris against the Mutual Life Insurance Company of New York, a corporation, to recover $500 on an insurance policy issued on the life of one William B. Aris. From a judgment in favor of the plaintiff, the defendant has appealed.

The appellant contends that the trial court erred, (1) in an instruction given, and (2) in refusing an instruction requested. It is not necessary to state these instructions. Conceding, without deciding, that the one given was erroneous,

and that the one requested was proper, the errors predicated thereon were harmless, for the reason that, under the evidence, no verdict could have been rightfully rendered other than one for the respondent, and that had a verdict been returned in appellant's favor, it would have been the duty of the trial court to enter judgment in favor of the respondent, notwithstanding such verdict, had he moved therefor.

The pleadings and undisputed evidence show that, on May 26, 1906, William B. Aris, the assured, made written application to the appellant upon one of its printed blank forms, for five life insurance policies, one payable to his son C. W. Aris, the respondent herein, and the others payable to other members of his family; that the application contained the following questions and answers thereto, made by the applicant to appellant's duly authorized medical examiner:

"(8) What is your daily or other habit in the use of wines, spirits or malt liquors? No daily habit, an occasional drink. (a) Which of these do you use? Whiskey. (b) What has been your habit in the past? Have always been in the habit of taking an occasional drink; sometimes several weeks pass without any. (d) Do you now use, or have you ever used, opiates, chloral, cocaine, or any other narcotic drug? If so, to what extent? No;"

that the policies were thereafter issued; that William B. Aris died on April 2, 1907; that proof of his death was made; that appellant denied its liability; that separate suits were commenced by the beneficiaries; and that trial was had in this cause, with the stipulation that the other actions should abide its result. The appellant, after pleading the substance of the answers above mentioned, which were warranted to be true and were a consideration for the policy, further alleged:

"(3) That in truth and in fact the said William B. Aris was, as he well knew, at the time of the signing of said application, for a long time prior thereto and ever afterwards until his death, addicted to the habit of drinking intoxicating liquors daily in large quantities and so as to injure his health thereby, and the said William B. Aris did, at the time of

signing of said application, and did continue at all times until his death, to make use of chloral and other narcotic drugs so as to injure his health.

"(4) That said defendant company did not know, and had no means of knowing until after the death of the said William B. Aris, of the habit of the said William B. Aris, as aforesaid, of habitually drinking, or of the use by the said William B. Aris of chloral or other narcotic drugs, or either of them."

These allegations were denied by the respondent. On the trial no evidence was offered to show that the assured had been addicted to the use of chloral or other narcotic drugs, or that he had injured his health by the use of such drugs or intoxicating liquors. The only issue tried was whether the answers of the assured made in the application, relative to his use of intoxicating liquors, were false; or in other words, were they such misrepresentations of the actual facts as to amount to a breach of his warranty, and avoid the policy. A number of witnesses testified as to the habits of the assured in the matter of using intoxicating liquors. One Hall, called by appellant, stated that he had known the assured for about two years immediately preceding the date of the application, and during that time had on several occasions seen him intoxicated. He in part testified on his examination in chief as follows:

"Q. How many years was he in Edwall altogether? A. Two; two years . . . Q. And it was during that time you saw him intoxicated? A. Yes, sir. Q. Well, how often? A. Oh, I could not say how often. Sometimes he apparently would be, for two or three days at a time, and then there would be times when apparently he would not be. Q. He would be what, for two or three days at a time? A. Under the influence of liquor. Q. For two or three days at a time? A. Yes, sir . . . Q. Now, how frequently would those sprees occur? A. I do not know that I could tell you exactly. I just would barely see him on the street in that condition. Sometimes it seemed as though they were quite frequent, and then there would be times it seemed he would be keeping very straight. Q. Of course, you cannot remember

the exact times that these lasted or occurred? A. No, sir. Q. But can you tell the jury a little more exactly about how often he would have these sprees? Just approximate it as near as you can, Mr. Hall. A. Oh, I suppose that he would probably—every three or four weeks. Q. Every three or four weeks approximately? A. Approximately. Q. Well, how would he demonstrate his condition of intoxication, Mr. Hall? A. Well, I don't know of any particular difference from any other man; quite talkative. Q. Did he stagger? A. No; I don't know as I ever saw him stagger. Q. He was not affected that way ordinarily? A. No. Q. But you knew he was intoxicated? A. Yes, sir."

No stronger evidence than this was produced in favor of appellant as tending to show frequent intoxication. On cross-examination the same witness further testified:

"Q. Now, did you ever see him when he gave any other physical manifestation of intoxication, other than by his talk? A. No, I never did. Q. So that, outside of the fact that he was talkative at times, you would not have noticed that he was intoxicated? A. No, I do not think I would. Q. Did you ever see Mr. Aris when he was incapacitated from doing business by the use of intoxicating liquor? A. No, sir. Q. Now, you stated that you were unable to fix the times; that is, intervals, between the times when he drank, definitely. I want to ask you if it is not a fact that on one occasion at least, that between three and four months intervened between his use of intoxicating liquor at all while at Edwall, approximately four months? A. I think I stated I was not able to fix the time. Q. That is what I say. I wanted to ask of you if it is not a fact, while he was living at Edwall, and during the last year he was at Edwall, there was four months approximately intervened at one time during which he used no liquor whatever? A. Yes, there might have been. I do not know that he did not use any. I could not say as to that."

One Butler, another witness for appellant, stated that he knew the assured drank some, and had seen him drunk once. Another witness, Balmer, stated that at times the assured would get "too much." Another, that on several occasions the assured was under the influence of liquor, and that the

witness should have hated to have done business with him. One witness for respondent saw the assured drunk once, but stated that he was well acquainted with him for three years prior to his death, meeting him frequently, doing business with him, and that he had once noticed him under the influence of liquor, evidently referring to the occasion on which he had seen him drunk. No witness stated that he had actually seen the assured drunk on more than one occasion. Some witnesses said he was occasionally full; others that he was several times under the influence of liquor; others that he was sometimes intoxicated and talkative. All who were asked the question, except one witness who testified to a single instance to the contrary, stated that he was always able to attend to the transaction of his business and did so. Members of his family and other witnesses, in substance, stated that he drank occasionally, but that at times he would go for weeks and sometimes months without doing so.

The controlling issue to be determined was whether the insured wilfully and intentionally made false answers in his application. Testing the truthfulness of his statements by the facts proven, we hold he did not, and that the appellant has failed to sustain its defense. The assured said that he had no *daily* habit of drinking. The evidence sustains the truthfulness of this statement, as days and even weeks or months passed without his drinking. As to his *other* habits, he stated that he drank occasionally; that he drank whiskey, and that he had *always* been in the habit of taking an occasional drink. The first definition of "occasional" given by the Standard Dictionary is: "Occurring more or less frequently, but not at fixed or regular intervals." A more apt term could not have been used to describe the assured's habit of drinking. He drank more or less frequently; sometimes more frequently, again less frequently for weeks at a time, or not at all. His intervals of drinking were not fixed or regular. He was not asked whether he at any time took too much; whether he became full, talkative, intoxicated, or

drunk, and made no representations in that regard. The facts proven are not inconsistent with the truthfulness of his answers. The appellant was advised that he drank on occasions; that he had always done so, and, having such information, accepted the risk and issued the policy. A printed pamphlet of appellant's instructions to its medical examiners was admitted in evidence. It contained the following clause:

"The regular or *occasional* use of intoxicating liquors, tobacco or narcotics needs special investigation, as experience has proved that habits of drinking and the use of narcotic agents have more influence in determining longevity than any other factor in the problem of life insurance. Therefore explicit statements regarding habits of drinking must be given, avoiding the use of such terms as 'moderate,' 'occasional,' etc."

Notwithstanding the fact that the assured, in stating his habits, used the word "occasional" in his answers to appellant's medical examiner, the appellant issued the policy, and it is in no position to now deny its liability thereon. Without regard to instructions given or refused, the only verdict which the jury could have properly rendered was the one it did render, and the errors of which appellant complains were not prejudicial. In *Denny v. Kleeb*, 40 Wash. 634, 82 Pac. 920, this court said:

"A judgment will not be reversed because of error in giving or refusing instructions, when the verdict rendered is manifestly right and in accordance with the evidence. In other words, errors growing out of a charge are always to be disregarded when the verdict is so plainly in accordance with the evidence that it follows as a conclusion of law thereon. *Davis v. Gilliam*, 14 Wash. 206, 44 Pac. 119; *Secor v. Oregon Improvement Co.*, 15 Wash. 35, 45 Pac. 654."

We hold that the verdict is this case follows as a conclusion of law from the evidence. The judgment is affirmed.

RUDKIN, C. J., DUNBAR, FULLERTON, and CHADWICK, JJ., concur.

MOUNT, GOSE, PARKER, and MORRIS, JJ., took no part.