[No. 8303. Department Two. October 27, 1909.]

A. GRANT, *Plaintiff and Appellant*, v. JOHN D. ARMSTRONG, *Defendant and Appellant*, BELL FUEL COMPANY, *Respondent.*[1]

APPEAL—PRESERVATION OF GROUNDS—INSTRUCTIONS—REQUEST. Error cannot be assigned on the failure of instructions to cover the plaintiff's theory of the case, where no instructions were requested on the subjects regarding which complaint is made.

APPEAL—REVIEW—HARMLESS ERROR. Error in giving instructions is harmless where the evidence was insufficient to warrant a verdict for the appellant.

[1]Reported in 104 Pac. 632. ·

APPEAL—REVIEW—GRANT OF NEW TRIAL. An order granting a new trial, after nonsuit, must be affirmed if there was any evidence to sustain a verdict for the plaintiff.

NEGLIGENCE—DRIVER OF TEAM—EVIDENCE—SUFFICIENCY. The evidence is insufficient to warrant a finding that the proximate cause of plaintiff's injuries was the negligence of the driver of a team that took fright at an automobile, where all of plaintiff's disinterested witnesses testified that he was holding his horses tightly and doing all he could to keep them under control, although one interested witness testified that he was driving with loose lines.

MUNICIPAL CORPORATIONS—USE OF STREETS—NEGLIGENCE—AUTOMOBILES—PLEADING—PROXIMATE CAUSE. A complaint alleging that a team was frightened by the negligence of the driver of an automobile in blowing his whistle when directly opposite the team, while driving at a high rate of speed in violation of a city ordinance, in such a manner as to frighten the team, fairly includes the rate of excessive speed as a proximate cause of the accident.

SAME—USE OF STREETS—AUTOMOBILES—NEGLIGENT DRIVING—EVIDENCE—SUFFICIENCY. There is sufficient evidence of negligence in the driving of an automobile, whereby a team was frightened and ran away, to require the case to be submitted to the jury, where it appears that the automobile was run at a speed of twenty or twenty-five miles an hour, on a street where there were many teams and where the city ordinances prohibited a speed in excess of ten miles an hour, that the driver passed within fifteen feet of the team, and blew his whistle when directly opposite, and did not notice the horses before they started to run.

Appeal by plaintiff from a judgment of the superior court for Pierce county, Shackleford, J., entered June 17, 1909, upon the verdict of a jury rendered in favor of the defendant Bell Fuel Company, in an action for personal injuries caused by a runaway team; also, appeal by defendant Armstrong from an order for a new trial as to him, after having been granted a nonsuit at the trial. Affirmed.

*Govnor Teats, Hugo Metzler,* and *Leo Teats,* for appellant Grant.

*William P. Reynolds, Robert M. Davis,* and *Hayden & Langhorne,* for appellant Armstrong.

*Bates, Peer & Peterson,* for respondent Bell Fuel Company.

DUNBAR, J.—The plaintiff, A. Grant, brought this action to recover judgment against appellant Armstrong and the defendant Bell Fuel Company, on account of personal injuries alleged to have been sustained through the negligence of said defendants. The facts constituting the cause of action will be better understood by setting forth paragraphs 2 and 3 of the complaint:

"(2) That on the 12th day of February, 1908, at about the hour of 2 p. m., the plaintiff in the regular course of his employment for the Fidelity Transfer Company was assisting the driver of the team of two horses and wagon along Jefferson avenue; that the plaintiff was riding on the wagon, guarding a large plate glass which was being hauled by said Fidelity Transfer Company, and that said wagon was in charge of a driver, A. F. Braga; that said A. F. Braga proceeded along said west side of said Jefferson avenue at or about the intersection of Jefferson avenue and Commerce street.

"(3) That the said team belonging to the Bell Fuel Company was in charge of a driver whose name is unknown to the plaintiff at this time, who was driving along said Jefferson avenue down to the center of the street and toward Pacific avenue; that the said driver carelessly and negligently allowed the lines to hang loose, and carelessly and negligently allowed said horses to walk along without control over said horses which he was driving, and carelessly and negligently placed himself in position on the hind running gear of his wagon in such a way and manner as to be unable to have control and gain control of his team of horses if they would suddenly start to run, and especially at the time they started to run as hereinafter stated; that the said John D. Armstrong was proceeding along said Jefferson avenue toward Pacific avenue, driving an automobile with license No. 1436; that the said John D. Armstrong carelessly and negligently ran his machine at the careless and negligent high rate of speed of about twenty miles per hour and in violation of ordinance No. 3006 of the city of Tacoma, an ordinance regulating the use and rate of speed at which automobiles and motor vehicles may be run in the city of Tacoma; that he ran down the left side of said street behind the said Bell Fuel Company's team in such a manner that it caused said horses to become

frightened, and that the said horses, due to the said careless-
ness and negligence of the said driver in not having said
animals under control and the careless and negligent manner
said driver was driving said team as hereinbefore stated,
jumped and started to run and ran down said Jefferson ave-
nue with great speed and ran into the wagon on which said
plaintiff was riding, throwing the said plaintiff to the ground,
breaking both bones of his right leg above the ankle, sprain-
ing his right ankle, crushing and injuring his left leg, strik-
ing his head and face and knocking out four of his teeth,
maiming and injuring said plaintiff for life."

Upon the trial a nonsuit was granted as to the defendant
Armstrong. The case was submitted to the jury as against
the Bell Fuel Company, and verdict rendered in its behalf.
On motion for a new trial, the lower court granted the same
as against the defendant Armstrong, but denied the same as
against the Bell Fuel Company. Defendant Armstrong
appeals from the order of the court granting the motion for
a new trial in his cause, and plaintiff Grant appeals from
the judgment in favor of the Bell Fuel Company. We will
first dispose of the appeal of plaintiff Grant.

The plaintiff raises many objections to the instructions of
the court, and insists that his theory of the case was not
given; but he did not present any instructions on the subjects
regarding which he complains, and it was said by this court
in *Allend v. Spokane Falls & Northern R. Co.*, 21 Wash. 324,
58 Pac. 244:

"The latter part of the objection goes rather to what is
omitted from the instruction than what is contained in it.
The remedy for this defect, however, is not by an exception
merely. The complaining party must call the court's atten-
tion to the omission, and request such modifications or further
instructions as he may think proper. Unless this is done, this
court cannot afford relief";

citing many cases.

But, even if the court had committed error in respect to the
matters complained of by the plaintiff, it would be harmless
error in this case, for the overwhelming weight of the testi-

mony presented by the plaintiff was to the effect that the
negligence of the driver, of the Bell Fuel Company was not
the proximate cause of plaintiff's injury, and if a verdict
had been rendered and judgment entered it could not have
been sustained under the undisputed testimony in this case.
All the disinterested witnesses introduced by the plaintiff
testified that the driver was holding his horses tightly, and
doing what he could to keep them under control. It is true
that the witness Braga, who was one of the parties injured
and whose cause was united with that of Grant in the prosecu-
tion of the case, testified that he had called attention to the
fact that the driver of the wagon was standing against the
brakehold, and was driving with loose lines. If the jury be-
lieved all the witness said, it would not be sufficient to establish
the negligence of the driver as the proximate cause of this
injury. The driving of horses is not an exact or uniform
science. There are no rules or course of study prescribed for
drivers; as yet, no society or memberships asking for pro-
tection from alleged incompetent drivers. Some men drive
with a loose rein; some with a tight rein. Some men are
quicker of eye or hand than others. Men have different
judgments in regard to the looseness or tightness with which
a rein should be held. Some horses can be driven only with
tight lines, and some only with loose lines. So that on that
question there is such a multiplicity of opinion and so many
different distinctions that the testimony in this case could
not under any circumstances be held to be sufficient to charge
the driver with negligence.

The other branch of the case presents a more difficult
proposition. The appellant Armstrong's contention is that
the court erred in granting the motion for a new trial. So
that the only question for this court to determine, especially
under the announcement by the court that the new trial was
granted solely for the reason that the court had, on more
mature deliberation, concluded that there was sufficient evi-

dence of negligence on the part of the automobile driver to go to the jury, is the question suggested by that announcement. If it should appear from the testimony of the plaintiff that there was no testimony to support the allegations of negligence contained in the complaint, it would be the duty of this court to reverse the order of the lower court granting the new trial. But if it should find from such testimony sufficient evidence which uncontradicted would sustain a judgment, then it becomes its duty to affirm the action of the lower court in granting the motion for a new trial.

It is contended by the defendant Armstrong that, under the terms of the complaint, all the negligence alleged is the negligence of the driver of the automobile in blowing his whistle when directly opposite the Bell Fuel Company's team, and that the allegation in regard to the careless and negligent high rate of speed set forth in the complaint is not connected with any allegation of a proximate cause. This contention, if the complaint were viewed in the light of the most technical rules of construction, might possibly be sustained, for it is a little disjointed and disconnected in its statements. But by the aid of liberal construction, we think it can be seen from the complaint that the intention of the pleader was that the negligence charged as the proximate cause of the injury was both the careless and negligent high rate of speed and the careless and negligent blowing of the whistle. Otherwise there would have been no occasion to have incorporated into the complaint the allegations of the careless and negligent high rate of speed, in violation of the city ordinance in regard to the regulation of the speed of automobiles. We think, therefore, that the defendant was fairly put on notice as to the negligent acts complained of as being the proximate cause of the injury.

The testimony was to the effect that this automobile was traveling at from twenty to twenty-five miles an hour. The jury would have been justified in concluding from the testimony that it was traveling at the rate of twenty-five miles

an hour.  An ordinance was introduced in testimony prohibiting the running of automobiles on the streets where this accident occurred at more than ten miles an hour.  It is urged by the defendant that the driver was not only not committing an indiscretion, but that he was doing his duty and obeying the law in blowing his whistle as he did, for the reason that an ordinance of the city provides that "every automobile or motor vehicle shall be provided with a bell or horn, which shall be rung or blown by the operator whenever there is danger of collision or accident, or when crossing any street upon which there is a street railroad track."  But that ordinance must be construed in connection with the other ordinance limiting the rate of speed; and the blowing of the horn when an automobile is traveling at the rate of ten miles an hour might have a different effect altogether from the blowing of the horn when the same machine is traveling at the rate of twenty-five miles an hour.

While, under certain restrictions, automobiles are entitled to the use of the streets the same as other vehicles, by reason of the menace which they are to other vehicles and to pedestrians the drivers of such machines must exercise care and caution commensurate with the danger.  The driving of an automobile down as thickly populated a street as the one in question here was, where, as the testimony shows, there were pedestrians and teams of all kinds, at the rate of twenty-five miles an hour, was a reckless act.  It might well be that an automobile which was passing a team at the rate of ten miles an hour would not scare it or cause it to run off, while one going at the rate of twenty-five miles an hour would.  There is a certain whir and swish accompanying the rapid passing of an automobile which is terrifying to a horse unaccustomed to it, especially when it passes in close proximity to it.  According to the testimony the automobile was within fifteen feet of this team when its horn was first blown, and was very close to it when it passed.  That the driver was negligent is plainly shown by his own testimony.  On page

84 of the statement of facts he states that he did not see the team before they started to run. But when a man is propelling a large, dangerous machine like an automobile through a crowded street at the rate of twenty or twenty-five miles an hour, it is his duty to see teams that are immediately before him, before he is so close upon them that an accident cannot be averted. It might well be that, if the automobile had been driving within the time limits prescribed, this accident might have been averted if the driver of the automobile had been taking notice of that which was in the street before him and of which he should have been taking notice.

Under all the circumstances as shown by the testimony, we think there was sufficient evidence of the negligent action of the driver of the automobile being the proximate cause of the injury to carry the cause to the jury. The judgment will therefore be affirmed.

RUDKIN, C. J., CROW, PARKER, and MOUNT, JJ., concur.