[No. 18727.   Department One.   December 10, 1924.]

WALLACE MOUNT, *Respondent,* v. PAUL KRILICH, *Appellant.*[1]

NEW TRIAL (13)—RULINGS AND INSTRUCTIONS AT TRIAL. It is error to grant plaintiff a new trial for error of law where, under the evidence introduced, a verdict for plaintiff would not be sustained.

GIFTS (12)—EVIDENCE—SUFFICIENCY. The evidence is insufficient to establish a completed gift to the donor's minor nephews, by a deposit in a savings bank in trust, where the donor did not declare the names of the *cestui que trustents* at the time of making the deposit "in trust," and retained possession and control of the bank book and testified that he merely intended at some future time and under certain conditions to use the money for their education.

Appeal from an order of the superior court for Pierce county, Card, J., entered March 8, 1924, granting plaintiff a new trial, after a verdict for the defendant, in an action to establish a gift. Reversed.

*W. B. Sachse* and *W. R. Flaskett,* for appellant.

*John E. Belcher,* for respondent.

TOLMAN, J.—This is an action to establish an alleged gift of $2,000 in money, said to have been made by appellant to his two minor nephews. The claim was assigned by the guardian of the minors to respondent for collection. He brought the action as plaintiff. The case was tried to a jury which returned a verdict for the defendant. The trial court granted a new trial, from which order the defendant has appealed.

The order granting a new trial was a general one, and ordinarily, as outlined in *Sutherland v. Northern Pacific R. Co.,* 124 Wash. 413, 214 Pac. 823, we could not interfere; but here it is contended that under all of the evidence in the case, no other verdict than the one returned could have been rendered, and that there-

[1]Reported in 230 Pac. 828.

fore, since no other verdict could have been sustained under the evidence, to set it aside and grant a new trial was an error of law which can be reviewed here, a doctrine which we have already recognized (*Grass v. Seattle,* 100 Wash. 542, 171 Pac. 533) ; and being convinced that it is a sound and wholesome one, we must follow it when the facts require it.

The complaint alleges a completed gift in consideration of love and affection and other moral obligations, resulting in the money being deposited in a bank as the property of the donees, but in the name of the donor, as trustee. The material allegations of the complaint are denied by answer, and affirmative matters are pleaded to the effect that all that the defendant did on the premises was no more than the expression of an intention at some future time under certain circumstances and conditions, to use so much money in the future education of the minors; and also it is pleaded that the mother of the minors is suing in another action for the money under the claim that the funds belong to a co-partnership of which the deceased father of the minors and the defendant were both members. The new matter is denied by the reply, and it is there alleged that testimony given by the defendant in the action to establish the partnership, and the admissions of his counsel in that case, estop him from denying that there was a completed gift.

The evidence upon the trial consists chiefly of that given by appellant, called as a witness for respondent, who in substance said that his brother George, the father of these minors, died in 1918, leaving a widow and these two minor children surviving, and but very little property; that in February, 1919, he opened a savings account in his own name in the Scandinavian-American Bank of Tacoma, by depositing $1,000; that

the signature card was signed "Paul Krilich" at the time, and never thereafter changed. In the same way, he deposited an additional $500 in August, 1919, and on June 15, 1920, he deposited $469.85, which, together with the accrued interest, brought the balance in bank up to $2,000; that, in making the last deposit, he placed the word "trustee" on the deposit slip after his name, but did not make the deposit for the minors, or intend to name himself as trustee for them, though he did then intend to help in their education. He further testified that the money was all his own; that no person was ever named at any time as the beneficiary of the last deposit, or of any part of the fund; that the savings bank book was at all times retained in his own possession, and that, upon the failure of the bank, he made claim for the money in his own name and right, and has received five dividends thereon from the liquidator. He further testifies:

"Q. That is, you deposited, took this money amounting to then about two thousand dollars, or a little more, in the Scandinavian-American Bank and you put that deposit then to yourself as trustee of your brother's sons? A. No. I never. Q. What did you do? A. No. sir. Q. What did you do? A. When his father died and the boys started to run around and get rough and Saturday when they came home after school . . .

"A. When I put the first two deposits I never intended to put trustee. Q. Never intended to? A. Never intended to; that was all my money. Q. When you had two thousand dollars there, however, you did make that deposit a trust fund? A. Trustee. Q. A trust fund? A. Yes, sir. Q. For whom. A. Well, I decided to help my brother's sons through education. . . ."

"Q. But you did not intend at that time to have any of this fund a trust fund until you made the declaration of trust, to which you have testified, in 1920, is that right? A. Yes, I never—that is right. Q. So that when you put in your first thousand dollars you did

not put it in with reference to the boys at all? A. No, sir. Q. And when you put in the second $500 you did not? A. No, sir. Q. But when you increased it up to a little over two thousand dollars in all, then you put your name and trustee after it, for the benefit of the boys? . . .

"A. I made up my mind at that time. Q. Made up your mind to what? A. To help the boys out. Q. And made the deposit for their benefit? A. For their education. . . .

"Q. When was it you had the conversation with the children? A. Well, along in 1920, and I was in the dining room and she was in the kitchen. She didn't was there, but of course only about a door between us. The boys, I give them a little talk and I said, now boys, if you want to be good boys—and they been running out and running out, they didn't come straight to home when they come from school and didn't come home and I told her time after time, now, I says, you keep those boys home on time, let them come home from school and stay home; make him stay home and Sunday send to church, to Sunday school, but she looked to me she didn't intend to do, don't care if them boys brought up right or not. But I was time after time kicking on that. In 1920 I took the boys up to Father Ryan in the church. I told Father Ryan now these two boys, I says, going to come to Sunday school in the church. I gave him talk and see him after that next I think it was Sunday after that Sunday; he just went once up and after that they laid in bed. I get up and I asked her where is the boys; she says, I don't know where the boys, they went out. I said why, didn't you send them to church? she said, since my father died nothing to do, I don't believe it. I was some mad, I walk out. But later, afterwards, an hour or two the boys come home and I raise the church, and I said, why didn't you go to church this morning? Well, boys didn't say anything but Pete Katich was there boarding with her, one of her cousins, he swore to me, he said, are you crazy? and he pulled out a red book. He says, boys, this is your religion, believe in this. I feel bad. I walk out. I, later, after that, I was figuring to see the boys

in—not keeping like should be, and I made my mind I try something else. One evening I told the boys in nice way, I says, boys, now if you want to be good boys, listen to what I tell you, go to church, I says, I made up my mind, I says, I am going to spend one thousand dollars on each of your educations. The little Charlie, he smiled, but oldest he didn't say anything, didn't smile. And that is when I went to the bank, to put the money, I put trustee, but since that boys never listen to anything never went to church.''

As against this testimony, it was shown that, in the other action, appellant had testified that he had put $2,000 in the bank for them, and that his counsel in that action made a statement to the court in which he said:

''At the house of Matiji Stipich there were several I. W. W., who carried on Red talk for their gospels and made fun of the boys about going to Sunday school and so forth, but Paul induced them to attend and promised them certain savings and deposited certain amounts for their benefit, of about two thousand dollars as trustee for them, in the Scandinavian-American Bank, and he has made claim for that. That was all done out of kindness of his heart and kindness for the boys.''

Six other witnesses testified to statements made by appellant to the effect that he had money in the bank for the minors; and an officer of the bank testified that the word ''trustee'' did not appear on the first or second deposit slips, or on the signature card, and that the money could have been withdrawn at any time upon the signature of Paul Krilich, without the word ''trustee'' appended. Is this sufficient to support a verdict finding that there was a completed and enforcible gift? As was said in *Jackson v. Lamar,* 67 Wash. 385, 121 Pac. 857:

''While it is true the courts have relaxed the rigor of the old rules, they have never departed from holding that something more is required to constitute a gift,

either *inter vivos* or *causa mortis,* than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery, either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory. Although it may not be true that the law now presumes against a gift, it certainly does not presume in its favor, but requires proof.''

See also, *Meyers v. Albert,* 76 Wash. 218, 135 Pac. 1003; *Sturgis v. McElroy,* 113 Wash. 192, 193 Pac. 719; *In re Hubbard's Estate,* 115 Wash. 489, 197 Pac. 610; *Vaut v. Vaut,* 118 Wash. 221, 203 Pac. 377; *Meyer v. Campion,* 120 Wash. 457, 207 Pac. 670.

The respondent seems to contend that, when one makes a deposit in bank to the credit of himself as trustee, the presumption is that he thereby divests himself of title to the fund, and vests that title in the unnamed and undisclosed *cestui que trust.* The cases which he cites do not go that far, though in some where the *cestui que trust* was explicitly named in opening the account, that fact, together with all of the other facts and circumstances, has been considered in holding the gift to be completed. None of these authorities seem to deny, or in any way modify our rule, as above quoted.

Nor can we find sufficient in the testimony or the statement of counsel in the former case to work an estoppel. When that testimony and the statement are fairly construed, they are in no wise inconsistent with the testimony in this case. No attempt is made to show that the minors or anyone representing them relied or acted thereon to their injury or disadvantage.

We conclude that the evidence was insufficient to establish a completed gift; and therefore no verdict other than the one rendered could have been permitted to stand, and it was error to set it aside and grant a new trial.

The judgment is reversed with directions to enter a judgment on the verdict.

MAIN, C. J., HOLCOMB, BRIDGES, and PARKER, JJ., concur.