[No. 28695. Department Two. October 31, 1942.]

DALE SELLMAN et al., Respondents, v. SAMUEL D. HESS, Appellant.[1]

'Reported in 130 P. (2d) 688.

*Arthur E. Campbell* and *Whittemore & Truscott,* for appellant.

*Houghton, Cluck & Coughlin* and *Mervyn F. Bell,* for respondents.

SIMPSON, J.—Plaintiffs instituted this action to recover damages for personal injuries to plaintiff Dale Sellman occasioned in an automobile accident. The case, tried to a jury, resulted in a verdict in favor of defendant. Thereafter, plaintiffs interposed a motion for a new trial which the court granted on the ground that two instructions given to the jury were erroneous. At the conclusion of the testimony for plaintiffs, defendant interposed a motion for a nonsuit, which was dismissed. Defendant appeals and assigns as error the granting of plaintiffs' motion for a new trial. For convenience we will refer to Dale Sellman as respondent.

The facts may be summarized as follows: The accident occurred May 14, 1941, at approximately 9:30 in the evening on an arterial highway referred to as the Bothell-Seattle highway. The highway is practically level, runs east and west at the place of the accident, is about forty feet wide divided into four lanes, each marked by yellow lines, a double line in the center and a single line dividing each of the east and west portions into traffic lanes. The roadway at the scene of the accident is comparatively straight for a considerable distance. The pavement on the north lanes was dark and that on the south was light in color. It was dark and raining at the time of the accident, the rain coming from the east. Several business places on the north side of the highway were closed at the time. A fuel yard and wrecking place on the south side were also unoccupied.

Appellant was driving his 1941 Buick coupe westerly towards Seattle on the right side of the northerly por-

tion of the highway at the rate of thirty or thirty-five miles per hour and had a woman companion in the car with him. His sealed beam lights, standard equipment for his model car, were turned on low, or courtesy, beam. Both windshield swipes were working, and his brakes and lights were in good condition.

Appellant testified that he did not see the respondent until he was about two feet from the car on the left and very close to the yellow line dividing the two west or Seattle-bound traffic lanes; that respondent was facing north in a crouching position with his head turned to the west away from the rain; and that he had to be walking or running across the highway or he would not have been hit. It is not certain whether the bumper hit respondent or not, but in any event respondent did collide with the upper part of the left side of the automobile hood, causing a dent therein, and was thrown to the pavement, landing on or near the double yellow line.

Appellant applied his brakes immediately he saw respondent and as a result skidded slightly to his left so that his car stopped at an angle, partly in each of the west-bound lanes but entirely north of the double yellow lines. He stated that his car came to a stop about thirty-five feet from where respondent landed on the pavement.

Respondent as the result of his injuries had no recollection of the accident or why he was there at the time it occurred.

Appellant was substantially corroborated in his testimony by the only other witnesses to the accident: his companion in the car, and a man who was driving east and saw respondent in the appellant's headlights an instant before he was hit.

Several persons, witnesses in the case, arrived immediately after the accident, and while no one noticed

any skid marks that night, two witnesses testified as having seen some the next morning. One witness testified the marks were about thirty-five feet long almost in a straight line on the outside lane running west from the place where respondent lay on the pavement, while another witness testified he saw marks fifty or sixty feet long on the inside of the west-bound lanes which marks swerved to the south to the middle of the road where there was a blood spot on the pavement.

Appellant contends that there was not sufficient evidence to justify the submission of the case to the jury and for that reason the giving of erroneous instructions was immaterial.

This court has held through a long line of cases that, if the evidence does not disclose facts sufficient to show negligence on the part of the defendant in a case of this nature upon his appeal from an order granting a new trial, the case must be decided in his favor regardless of errors contained in the instructions.

In *Grass v. Seattle,* 100 Wash. 542, 171 Pac. 533, it was stated:

"While the appellant discusses the case from the viewpoint of the trial court and attempts to show that there is no error in the record even from that point of view, it also makes the contention that, under the evidence, no other verdict could be permitted to stand than that returned by the jury. The respondents have not favored us with a brief, but we have nevertheless examined the evidence with care, not only from the very complete abstract furnished by the appellant, but from the statement of facts as well. This examination has forced us to the conclusion that the last contention made by the appellant is well founded. So concluding, it is unnecessary to notice the questions upon which the trial court rested its finding of error, as the other necessarily concludes the matter."

In *Humphreys v. Seattle,* 152 Wash. 339, 277 Pac. 834,

314

281 Pac. 994, we recall the following holding by this court:

"Beginning with the case of *Grass v. Seattle,* 100 Wash. 542, 171 Pac. 533, and followed in numerous later cases, this court has now adopted the rule that, when a motion for a new trial is granted and an appeal taken therefrom, even though the motion for a new trial may have been properly granted on certain specified grounds, yet the appellant may raise, and the court will consider, the question as to whether or not there was sufficient evidence to go to the jury."

Accord: *Davis v. Gilliam,* 14 Wash. 206, 44 Pac. 119; *Kellogg v. Cook,* 18 Wash. 516, 52 Pac. 233; *Denny v. Kleeb,* 40 Wash. 634, 82 Pac. 920; *Aris v. Mutual Life Ins. Co.,* 54 Wash. 269, 103 Pac. 50; *Grant v. Armstrong,* 55 Wash. 365, 104 Pac. 632; *Adams v. Anderson & Middleton Lbr. Co.,* 124 Wash. 356, 214 Pac. 835; 127 Wash. 678, 221 Pac. 993; *Mount v. Krilich,* 131 Wash. 627, 230 Pac. 828.

Did the evidence show negligence on the part of appellant?

"Negligence is not a positive thing; it is to be found according to the circumstances of each case, and must be determined in view of all the facts and conditions attendant at the time and place of the accident. Common sense is a better yardstick by which to measure the facts to determine the reasonableness of conduct in a given situation than any generalization laid down in the text books or decisions." *Pinckard v. Pease,* 115 Wash. 282, 197 Pac. 49.

While it is true that certain underlying principles of law must apply to all cases in which negligence is concerned, it is equally true that each case must be determined to a very large extent upon the pattern of its own facts.

In this case, it is apparent that respondent did not produce any evidence of negligence on the part of appellant, either directly or by way of inference.

Appellant was driving on an arterial highway on a dark, rainy night, well within the speed allowed by law, his lights and brakes were in good condition and were being used in the proper manner. There is no evidence or inference permissible from the facts in the present case that appellant did not have his car under control, or was not operating it in a careful or prudent manner, or had any reason to anticipate the presence of respondent at the point of collision, or that appellant saw him or should have seen him in time to avoid the accident.

The factual situations in *Martin v. Marateck,* 27 A. (2d) (Pa.) 42, are quite similar to those in the case at bar. In that case, the supreme court of Pennsylvania held that negligence on the part of the driver of the automobile could not be assumed because of the mere fact that a pedestrian was struck by the automobile.

The only evidence from which it might be argued that appellant was going at a speed in excess of that testified to by him, or that he was guilty of any other infractions of the rules of the road, is that relative to the skid marks being fifty or sixty feet in length.

"The mere skidding of an automobile is not an occurrence of such uncommon or unusual character that alone and unexplained it can be said to furnish evidence of negligence in the operation of a car." *Osborne v. Charbneau,* 148 Wash. 359, 268 Pac. 884.

The rule just stated applies with peculiar force to the facts in this case. There was no evidence that the skid marks indicated excessive speed or any other infraction of the rules of the road or those of sensible careful driving. In such cases, neither court nor jury may assume negligence.

Respondent raises some question as to whether it was established that he was moving when hit, and while this has no relation to the question of negligence on

the part of appellant, it must be taken as a fair inference from the evidence that respondent was either walking or running across the highway, because, from the testimony of the only witnesses to the accident, it is apparent that he would not have been hit had he been standing still at the time.

We conclude that there was insufficient evidence to take the case to the jury, and for that reason any error in the giving of the instructions was immaterial.

The order granting a new trial is reversed, with instructions to dismiss the action.

ROBINSON, C. J., BEALS, and DRIVER, JJ., concur.

BLAKE, J. (concurring in the result)—I concur in the result on the ground that the instructions complained of were not erroneous and that, consequently, the court erred in granting a new trial. The cause should be remanded for judgment on the verdict.

