[No. 4795.   Decided May 31, 1904.]

AZOA FOSTER, *Appellant,* v. SEATTLE ELECTRIC COM-
PANY, *Respondent.*

CARRIERS—NEGLIGENCE—INSTRUCTIONS—DUTY OWED TO PASSEN-
GERS—HIGHEST DEGREE OF CARE CONSISTENT WITH PRACTICAL CON-
DUCT OF BUSINESS.  In an action against a street railway com-
pany to recover damages for personal injuries, an instruction to
the effect that the company is not liable if it exercises towards
its passengers the highest degree of care consistent with the
practical conduct of its business, is a correct statement of de-
fendant's legal duty.

SAME.  While it is incorrect in giving such an instruction, to
further state that the conductor of the car should exercise the

1Reported in 76 Pac. 995.

12-35 WASH.

highest degree of care "consistent with the proper discharge of all the other duties of such employes," yet it is not prejudicial error where there was no evidence to the effect that the injury was caused by the fact that he was engaged in the performance of any other duty.

SAME—DUTY OF CARRIER TO ONE DESIRING TO BECOME A PASSENGER. Street railway employes are not required to exercise the highest degree of care in ascertaining whether a person desires to become a passenger, hence it is not error to instruct that the company is not liable to one injured in attempting to board a car, if the conductor, by the exercise of ordinary care, could not have seen him before starting the car.

SAME—RELATION OF PASSENGER AND CARRIER. To give rise to the relation of passenger and carrier, there must be the intent of the former to become a passenger, and an implied or express acceptance of the latter, and one who attempts to board a starting car from a position where he could not be seen by the company's employes, by the exercise of ordinary care on their part, is not a passenger.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTION NOT PERTINENT. An instruction is not necessarily prejudicially erroneous because it includes an abstract error which is not pertinent to the balance of the instructions nor to any of the evidence, when it does not take any question of fact from the jury.

Appeal from a judgment of the superior court for King county, Morris, J., entered February 11, 1903, upon the verdict of a jury in favor of the defendant, after a trial on the merits. Affirmed.

*Benson & Hall,* for appellant.

*Struve, Hughes & McMicken,* for respondent.

FULLERTON, C. J.—The appellant was injured while attempting to board one of the respondent's street cars in the city of Seattle, and brought this action to recover for her injuries, averring that they were caused by the negligence of the agents and servants of the respondent. The trial resulted in a verdict and judgment for the respondent.

The car which the appellant was attempting to board was a large vestibuled car, having but one place open, at the time of the accident, where passengers could board the same, which was at the right hand side of the rear platform. As the car proceeded along its route, it passed westerly along Pike street to the intersection of Second avenue, where it turned south, stopping at a few feet south of Pike street. The evidence of both sides agrees that, while the car was standing where it had stopped, two passengers entered it, and that the conductor thereupon signalled the motorman to proceed, and that the car started just as the appellant was in the act of boarding the same. The appellant's evidence tended to show that she was following immediately after the two passengers who did enter the car in safety, so close, in fact, that she was compelled to wait an instant for the last one, and that she was in such a position, when the conductor signalled the car to start, that he could have seen her, had he looked in that direction. The defendant's evidence tended to show that the conductor was in a position where he could plainly see the entrance, when the car came to a stop on Second avenue. He testified that, when the car stopped, he ceased the work he was engaged in, and looked back to the car entrance, and saw the two passengers enter; that, when the second one got on, he looked to ascertain if any one else was entering, or desirous of entering, and, seeing no one, gave the signal to go ahead, and began again his regular duties. There was evidence tending to corroborate the conductor; and evidence, also, to the effect that the appellant approached the car from the rear, out of the sight of the conductor, reaching it after the signal to go ahead had been given, and just as the car started; that others, standing by, saw

and appreciated her danger, and sought to warn her by hallooing; that the place where the accident occurred was a busy thoroughfare, and that more than the ordinary number of people were there at that time, owing to the fact that some social gathering had been held during the evening at the Masonic Temple, which stood near this place, and people were then leaving that place.

The court in charging the jury gave, among others, the following instructions:

"(2)   I instruct you, second, that if you believe from the evidence in this case that the plaintiff, in her efforts to get upon the defendant's car at the time and place and manner alleged in her complaint, acted as an ordinarily prudent woman generally acts under circumstances entirely similar to all those which then surrounded the plaintiff; and if you believe, from a preponderance of the evidence, that the plaintiff attempted to get upon the defendant's car while the same was standing still and immediately after the other passengers had boarded the train, and that the defendant's servants started said car without having exercised the highest degree of care reasonably practicable under the circumstances and conditions existing at the time and place in question, to see that all persons who were in the act of boarding the said car were in places of safety, and that the negligent starting of the said car threw the plaintiff to the pavement and injured her as alleged in the complaint, then and in that event, your verdict will be for the plaintiff.

"(3)   If you find for the plaintiff, you will by your verdict award her one such gross sum, not exceeding the demand of her amended complaint, which is fifteen thousand dollars, as will in your opinion from the evidence justly, fairly, and fully compensate the plaintiff for all suffering, if any, which she has necessarily endured, as well as all that she will necessarily endure in the future, if any; for all time which the plaintiff has necessarily lost, if any, and all which she will necessarily lose, if any; for all permanent impairment of health, if any, which she

has sustained; for all medical treatment, if any, for which she has become obligated; provided, however, that you will not permit the plaintiff to recover for anything which was not the proximate, natural, and necessary result of the negligent acts complained of in the plaintiff's complaint.

"(4) Contributory negligence is pleaded as a defense in this case, and the burden of proving the same is upon the defendant. To sustain this defense it must appear to you, by a fair preponderance of the evidence, that the plaintiff contributed to her own injury by failing to act as ordinarily prudent women generally act under circumstances entirely similar to all those which surrounded the plaintiff at and just prior to her injury. Every person who rightfully attempts to board a street car as a passenger, at a place where such car usually receives passengers, has a right to assume that the men in charge of such car will exercise the highest degree of care reasonably practicable under the circumstances for the safety of all persons upon the said car or who may be lawfully attempting to get upon the same; and no passenger should be held guilty of contributory negligence because he or she failed to anticipate negligence, if such there was, upon the part of the men in charge of the car which he or she was attempting to board.

"(6) With respect to the degree of care owed by the defendant to its passengers, you are instructed that the duty enjoined by the law upon its conductor and motorman does not require the exercise of the highest degree of care possible to avoid an accident, but only the highest degree of care reasonably practicable under the circumstances and conditions existing at the time and place in question and consistent with the proper discharge of all the other duties of such employes. By the term 'highest degree of care' used in these instructions is meant that degree of care which would be exercised under like circumstances by careful, prudent, and experienced conductors and motormen generally.

"(7) The plaintiff in this case would not be a passenger within the meaning of the law, unless you find

from the evidence that plaintiff in the exercise of reasonable care and prudence on her part was actually attempting to board the said car, or so near thereto and in such a position as to indicate her intention so to do, in such manner as reasonably careful and prudent persons ordinarily board cars under like circumstances, and that the conductor either saw, or in the exercise of reasonable care should have seen, her intention so to do, before giving the signal for said car to start.

"(8)  If you believe from the evidence that the plaintiff came up to the said car from the rear, and was in a position where the conductor in the exercise of ordinary care in looking for intending passengers at the rear entrance of his car would not ordinarily see plaintiff, and if you further find that the said conductor, in the exercise of such care, did look and did not in fact see the plaintiff, and at once gave the signal to go ahead, and the car thereupon started, then there can be no recovery in this case and your verdict will be for the defendant.

"(9)  You are further instructed that if you find from the evidence that the conductor of said car, at the time of arriving at the corner of Pike street and Second avenue, was engaged in collecting fare or making change for a passenger, and after said car had stopped and before starting the same again, he was in a position where he could plainly see the rear entrance of said car through which passenegrs are permitted to board the same; and if you further find from the evidence that before giving the signal to his motorman to start said car he did, in fact, look to see whether there were any other persons about to board said car, and if in so doing he exercised the degree of care and prudence that would be employed by reasonably careful conductors under like circumstances, and did not see that plaintiff was approaching said car or was about to attempt to board the same, before giving his signal, then you should not find him guilty of negligence.

"(10)  If you find from the evidence that the car in question stopped on Second avenue on the south side

of Pike street for the purpose of receiving passengers in the usual way, and if you further believe from the evidence that the plaintiff came running towards said car from the rear thereof across the intersection of Pike street, and grabbed the handle-bar and attempted to board said car after the signal had been given and the said car was starting forward in the usual manner, then plaintiff assumed all the natural risks incident to such attempt to board the car, and under such circumstances she cannot hold defendant responsible therefor.

"(11)  You are further instructed that if you find from the evidence that while said car was standing still, waiting to receive passengers on the south side of Second avenue, the plaintiff ran diagonally across Pike street towards the rear of said car, and if you believe that after the signal had been given to start said car the plaintiff caught hold of the handle-bar of said car and attempted to board the same after it was in motion, and that in so doing she did not exercise the degree of care and prudence that would be exercised by ordinary persons under like circumstances, then it will be your duty to return a verdict for the defendant."

The assignments of error are all based on the instructions. It is urged that the sixth instruction is erroneous, because it reduces the degree of care required of the appellant's servants, while looking after the safety of its passengers, to that of ordinary care, and because, "by it the conductor was practically excused from looking after the plaintiff at all during such times as he was engaged in performing any duty for the defendant." It seems to us these criticisms are not well founded. It is evident that the court was endeavoring, by this instruction, to define the phrase, "highest degree of care," used in the second instruction above quoted, and to explain to the jury its applicability to the case before them. Leaving out the clause with reference to the other duties of the

employes, the rule there laid down is not inconsistent with the rule as we have heretofore announced it in, *Sears v. Seattle Consol. etc., Co.,* 6 Wash. 227, 33 Pac. 389, 1081, and *Payne v. Spokane Street R. Co.,* 15 Wash. 522, 46 Pac. 1054. It is not the rule that a street car company is an insurer of the safety of its passengers. There are dangers attending on their transportation which it seems no human prudence can foresee, while there are others which can be foreseen, but which cannot be effectually guarded against, because to do so would make the conduct of the business so burdensome as to prohibit it altogether. Hence, when a street car company exercises towards its passengers the highest degree of care consistent with the practical conduct of its business, it performs towards them its full legal duty, and is not liable, even for injuries which might have been foreseen and prevented, if the means required to prevent them would involve a burden amounting to a practical prohibition of the business. The instruction is consistent with these principles, and therefore is not erroneous.

With reference to the remaining part of the objection, it is, doubtless, incorrect to say, without further qualification, that the duty of the conductor and motorman of an electric street car towards the passengers thereon, is to exerercise the highest degree of care consistent with the proper discharge of all the other duties of such employes, yet we do not think it reversible error in this case. There was no evidence to the effect that the injury to the appellant was caused by the fact that the conductor or motorman was engaged in the performance of another duty, and therefore could not look out for the appellant. As to the motorman, no blame at all can be attached to him. He obeyed the signals given him by the conductor, and it

is not in evidence that he saw or knew that to obey such signals would result, or was likely to result, in an injury to the appellant. The negligence, if any, was on the part of the conductor, and, as to negligence on his part, there was a sharp conflict in the evidence. If the appellant's evidence was to be believed, then he was guilty of negligence in starting the car at the time he did start it, no matter what other duty he was performing at the time, and the court practically so told the jury. On the other hand, if the evidence on behalf of the respondent was to be believed, the conductor performed towards her his full duty, and the injury was the result of the conduct of the appellant herself, rather than the result of negligence on the part of the conductor. Under these circumstances, the error could not have been prejudicial, and, as we have repeatedly held, error without prejudice is not cause for reversal.

Instruction numbered seven is objected to, because it is said that it reduces the degree of care required of the appellant's servants to that of ordinary care, while the true rule is that the highest degree of care reasonably practicable under the circumstances should be exercised. But the rule contended for by appellant is applicable only after one has become a passenger. The company is not required to exercise the highest degree of care to ascertain whether or not a particular person walking or standing on a public street desires to become a passenger on its car. Ordinary care is all that is necessary in such a case. The instruction here complained of was intended to define the degree of care required of the respondent's servants in ascertaining whether or not a particular person desired to become a passenger, and is a correct statement of the rule in that regard.

The eighth instruction is objected to for the same reason, but we think the instruction without error. "To give rise to the relation of passenger and carrier there must be not only an intent on the part of the former to avail himself of the facilities of the latter for transportation, but also an express or implied acceptance by the latter of the former as a passenger." 6 Cyc. 538. Under the conditions described in the instruction, the appellant had not yet become a passenger, and, as we said in answer to the last objection, the servants of the company owed her only the duty of ordinary care. *Gaffney v. St. Paul City R. Co.*, 81 Minn. 459, 84 N. W. 304.

It is objected to the ninth instruction that it took from the jury one of the material issues of fact, in that it did not leave to them the question what is, and what is not, a proper time to take up fares, but we think the appellant misinterprets it. The matter relating to the making of change for a passenger could well have been omitted, as it was neither pertinent to the balance of the instruction, nor to any of the evidence in the case, but it takes no question of fact from the jury. Nor does it require a reversal of the judgment because it is not pertinent. Mere abstract error is never sufficient for that purpose; it must be prejudicial.

The tenth and eleventh instructions are so clearly free from error as not to require comment.

The judgment is affirmed.

DUNBAR, ANDERS, MOUNT, and HADLEY, JJ., concur.