[No. 16273.    Department One.    April 8, 1921.]

R. R. PINCKARD, *Respondent*, v. EDGAR PEASE *et al.*, *Appellants.*[1]

HIGHWAYS (52, 57) — USE OF HIGHWAYS — NEGLIGENT DRIVING OF AUTO — EVIDENCE — SUFFICIENCY.    A driver of an automobile cannot be held liable for injuries to a passenger, a doctor, answering an urgent call, where the car was being driven at a rate of thirty to thirty-five miles an hour on a slippery roadway, with the acquiescence of the passenger, and through a mistake of judgment the driver failed to check his speed in time on approaching a curve leading to a bridge, and the car skidded and crashed through the bridge railing, resulting in injury to the passenger.

Appeal from a judgment of the superior court for Kittitas county, Truax, J., entered October 28, 1920, upon findings in favor of the plaintiff, in an action for personal injuries sustained in an automobile accident, tried to the court without a jury.    Reversed.

*Preston, Thorgrimson & Turner,* for appellants.

*Kern & Henton,* for respondent.

MACKINTOSH, J.—This is an action for personal injuries, tried to the court without a jury, with judgment for the plaintiff.

The occurrence was as follows:  On the morning of November 3, 1919, Rebecca L. Pease, now deceased, the

[1]Reported in 197 Pac. 49.

wife of the defendant Edgar Pease, and mother of defendant Hugh Pease, lay critically ill at the Pease home, some five miles west of Ellensburg. Her condition was such that both the defendants were doubtful whether she would survive until a doctor could come from Ellensburg to her bedside. The telephone service being interrupted, the defendant Hugh Pease, a man of about thirty-five years of age, was asked by his father to take their automobile and go to Ellensburg and get the respondent, a physician practicing there, and bring him to the home. Hugh Pease drove to Ellensburg and did not find the doctor at home, but learned that he was expected at the hospital at eight o'clock, where Pease went and awaited him. The doctor arrived in a few minutes, and after arranging for the postponement of an operation he was to perform, came out of the hospital to the front thereof, where his own and the Pease automobiles were standing. The plaintiff, thinking that the trip could be made more quickly by getting in the defendant's car, took his place beside the defendant Hugh Pease, on the front seat, and they started on the trip.

It was snowing, and about an inch of snow lay on the ground. There were no chains on the car and the plaintiff made no suggestion that they be put on. He testified, in fact, "I would not have stopped to put on chains on my car had I been driving it." From the edge of town to the place of the accident is a distance of about two miles. The last mile before reaching the scene of the accident was a straight and hard-surfaced road, and over this road the plaintiff testified the car went from thirty to thirty-five miles an hour. At the end of this straight road was a curve leading to the approach of a bridge, and after this curve had been partly turned, the car skidded and went through the

railing, and the accident occurred which resulted in the plaintiff's injury.

The respondent's complaint is that Hugh Pease failed to slow down quickly enough for the turn and that this was negligence. The testimony is that, as the curve was being entered, the driver of the car applied the brakes, but the road being more slippery than he had judged it to be, the speed of the car was not lessened as much as he had anticipated, although lessened to a considerable extent. Under the circumstances of the situation, it cannot be said that the car going at the rate of speed which was testified to until it reached the point near the place of the accident was being driven in a reckless or careless manner. In fact, the respondent frankly stated in his testimony that,

"Q. I understood you to say he drove the car well and you had no criticism of his driving except that he didn't put on the brake as quickly as you would have put on the brake as he approached the bridge? A. Yes. If I remember correctly, he made the remark that it was awfully slippery and he would have to drive carefully, and I answered him with the remark that he was driving very nicely or something of the kind. . . . Q. Your idea was that as he approached this curve that he made a mistake of judgment in not slowing down quite soon enough? A. I certainly think he did. . . . Q. You don't think he had any intention but to be careful. A. No, not in the least. Q. You were both anxious to get there? A. Yes. Q. As a matter of fact, doctors who care for the welfare of the patient do drive hard? A. We take lots of chances."

We are not dealing here with the degree of care that Hugh Pease would be held to in case he had injured someone on the highway. The degree of care which he was called upon to exercise should be measured by what a reasonable man would have done in the same circumstances. He had with him a medical man whose pur-

pose was at one with his, that was, to reach the bedside of Mrs. Pease in the shortest possible time. They were engaged on the same errand. In this degree, they were actuated by the same feeling, and to hold either one of them liable for negligence, under these circumstances, the negligence must have been practically gross or wilful. The exercise of a fine and discriminating judgment in such circumstances is not practical nor obligatory. The driver cannot be said to have done differently than a reasonably prudent man would have done under the same circumstances. The curve was not a specially sharp one, and the speed at which he was going was not excessive in view of the imperative nature of the errand, and an attempt was made to slacken speed at the curve.

So far as the appellant's responsibility to the respondent is concerned, we can find no act of negligence, and at most it was, as agreed to by the respondent, the result of a mistake of judgment.

Negligence is not a positive thing; it is to be found according to the circumstances of each case, and must be determined in view of all the facts and conditions attendant at the time and place of the accident. Common sense is a better yardstick by which to measure the facts to determine the reasonableness of conduct in a given situation than any generalization laid down in the text books or decisions. *Smith v. Spokane Falls etc. R. Co.,* 52 Wash. 350, 100 Pac. 147; *Thoresen v. St. Paul & Tacoma Lum. Co.,* 73 Wash. 99, 131 Pac. 645, 132 Pac. 860; *Fidelity & Casualty Co. v. Sittig,* 181 Ill. 111, 54 N. E. 903, 48 L. R. A. 359; *Da Rin v. Casualty Co. of America,* 41 Mont. 175, 108 Pac. 649, 137 Am. St. 709, 27 L. R. A. (N. S.) 1164.

The respondent, of his own volition, submitted to the judgment of Hugh Pease in the operation of the car.

He acquiesced in the speed, which was not extraordinary under the circumstances. If he himself had been driving he would have driven as fast. It may be that he would have exercised his judgment in a better way in slowing down for the curve, because the necessity of the situation might have differently appealed to him, accustomed as he was in the practice of his profession to the presence of similar dangers, and because of the fact that it was not his mother who was upon the point of death. This the respondent knew when he entered the car; he knew the state of mind that Hugh Pease must be in, and yet acquiesced in the manner of the driving, and for what at most may have been a mistake of judgment, he has no right to complain.

The judgment is reversed and the action dismissed.

PARKER, C. J., BRIDGES, FULLERTON, and HOLCOMB, JJ., concur.