[No. 31655. *En Banc.* January 3, 1952.]

NATHAN EVANS et al., *Respondents,* v. YAKIMA VALLEY TRANSPORTATION COMPANY, *Appellant.*[1]

[1]Reported in 239 P. (2d) 336.

842

*V. O. Nichoson* and *Hamblen, Gilbert & Brooke* (*Roy F. Shields,* of counsel), for appellant.

*Tonkoff & Holst,* for respondents.

WEAVER, J.—This is an action to recover for personal injuries suffered by Ila Marie Evans, allegedly caused by the negligent operation of a bus owned and operated by defendant. (Ila Marie Evans will hereinafter be referred to as though she were the sole plaintiff.) A jury returned a verdict for plaintiff in the sum of seven hundred fifty dollars. Plaintiff moved for a new trial on the grounds that the damages were inadequate and that substantial justice had not been done. The defendant bus company moved for judgment notwithstanding the verdict upon the ground that there was no evidence, or reasonable inference from evidence, to justify the verdict of the jury.

By a general order, the trial court denied defendant's motion for judgment notwithstanding the verdict and granted plaintiff's motion for a new trial. The order was entered prior to the promulgation of Rule 16 of Superior Court Rules, 34A Wn. (2d) 117. The bus company has appealed from this order.

■ ■   It is true, as plaintiff urges, that if there is sufficient evidence to take the case to the jury, we will not reverse an order granting a new trial when such order does not state the grounds or reasons therefor. *Coppo v. Van Wieringen*, 36 Wn. (2d) 120, 217 P. (2d) 294. However, it is error for the trial court to grant a motion for a new trial where there is not sufficient evidence to take the case to the jury in the first instance. The party against whom the verdict is rendered has the right to urge, upon appeal from the order granting a new trial and denying a motion for judgment notwithstanding the verdict, the fact that there was not evidence to take the case to the jury. *Adams v. Anderson & Middleton Lbr. Co.*, 127 Wash. 678, 221 Pac. 993. The rule which we have applied, and which should govern both the trial court and this court, is stated in *White v. Burke*, 31 Wn. (2d) 573, 197 P. (2d) 1008 (quoting from *Simmons v. Cowlitz County*, 12 Wn. (2d) 84, 120 P. (2d) 479), as follows:

" 'We have uniformly held that a motion for judgment notwithstanding the verdict should not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to justify the verdict.' "

■   The court continued by defining the type of evidence to be considered by us as:

" 'All *competent* evidence in the record which is favorable to the appellants we must regard as true and must give to them the benefit of every favorable inference which may reasonably be drawn from such evidence. Where the minds of reasonable men may differ, the question should be submitted to the jury. If, when so considered, we find there is substantial evidence to sustain the verdict, the judgment thereon must be affirmed.' " (Italics ours.)

■   We have, however, discarded the "scintilla of evidence" rule. The evidence sufficient to support a verdict must be substantial. *Adams v. Anderson & Middleton Lbr. Co.*, 124 Wash. 356, 214 Pac. 835; *Knight v. Trogdon Truck Co.*, 191 Wash. 646, 71 P. (2d) 1003.

The question is, as we asked in *Ferguson v. Seattle,* 27 Wn. (2d) 55, 176 P. (2d) 445,

"Was the verdict arrived at through legitimate inference from evidence or by mere speculation? That is one of the most difficult questions which can be presented to an appellate court, since, in the absence of a definite boundary between these two methods of arriving at a conclusion, what one man classifies as legitimate inference is very apt to be regarded by another as mere speculation."

Such being the rules which govern our consideration of this case, the evidence most favorable to the plaintiff and considered in this light, is as follows:

There is a bus loading zone on the southeast corner of the intersection of east Yakima avenue and Second street, Yakima, Washington. It is used by defendant's busses traveling east on east Yakima avenue. A bus zone sign marks its eastern boundary. Its western boundary is 70 feet 9 inches west of the bus sign and is the north-south building line of Second street. There is no platform under the control of defendant. From the curb line of the bus zone to the building line on east Yakima avenue is a sixteen foot sidewalk. The curb is marked as a bus loading zone. On the day in question, an automobile was parked in front of, and adjacent to, the east line of the bus zone. The curb is five inches high.

Plaintiff testified that, on May 27, 1949, about 2:15 p. m., she was in front of the Star Clothing Store "at Second Street, and I noticed the bus approaching, and I looked up to see what bus it was, *and it happened to be my bus,* and I went over . . ." (Italics ours.) Her testimony continued:

"Q. Tell what occurred after you saw the bus. A. Well, I went over, of course, to get on the bus, and when I stepped off—the bus was off far enough so I had to step off, and when I stepped off, I was at the same time getting a token out of my pocket, of a jacket I had across my arm, I was carrying a jacket because it was a warm day; so I looked down at the jacket, and when I looked up again to step on the bus, well, he had closed the door and was pulling out. Q. Now, when you looked down as you approached the bus,

was anybody ahead of you? A. Yes, one lady got on the bus. There was one lady got on. . . .

"Q. And then what happened? A. Then that is practically the last thing I remember. The bus struck me, and, of course, it just knocked me out, the bus just knocked me out. . . .

"Q. And I believe you stated you were in front of the store on the corner right there; is that right? A. The Star Clothing Company. Q. And then the bus moved on beyond you; is that right? A. Well, yes, it moved on until it stopped near the end of the—the far end at the stop. Q. And how far past you did it go? A. Well, when I saw it, I just walked on as the bus was moving . . .

"Q. The front end was beyond you? A. The front end.

"Q. Were you faced right straight towards the step of the bus at that time? A. *I was going at just a little kind of an angle.* Q. A little bit of an angle? A. Yes. Q. Then as I understand it, you didn't get your foot on the step of the bus at all? A. No. Q. You didn't get your hands on the hand rail of the bus? A. No. Q. And the next thing you knew, you looked up and the bus was pulling out; is that right? A. That is right. Q. And how far had it pulled out when it hit you? A. Well, now that—naturally when the bus was pulling out, the thing I done was started to get back on the sidewalk. Then I don't remember anything from that time on. When it hit me, it knocked me out. . . .

"Q. And as you looked up, the bus door had been closed and was starting to pull out; is that right? A. Yes, it was moving. . . .

"Q. What was it that struck you, do you know? A. No, I don't. Q. You don't know whether it was the door of the bus or the side of the bus? A. No, I don't. Q. It wasn't the front of the bus, was it? A. No. Q. Because the front of the bus had already gone on by? A. Yes, that is right. Q. Where did you fall? A. I fell in the street. Q. Did you fall forward? A. I don't know. . . .

"Q. You say you did not run beside the bus? A. No, I did not run. Q. But you walked fast; were you hurrying? A. Well, I might have took a hurried step or two until I saw what bus it was. Q. I see, and then your testimony is that you arrived opposite the front doors of the bus; is that right? A. Opposite —? Q. The front door of the bus or almost to the front? A. Well, I don't exactly know what you mean. Q. Well, you know where you get on the bus, don't you? You know where you ordinarily get on the

bus? A. As I remember it, *I walked angling to the bus door.*" (Italics ours.)

Plaintiff's testimony, in several respects, is contradicted by her own witnesses, the only eye-witnesses testifying to the accident. One of them testified the bus had pulled up quite close to the sidewalk; that the back of the bus was pulling out from the curb as plaintiff, standing on the sidewalk, fell flat on her face into the street; that she did not fall into the bus; that she did not fall at the side of the bus; that the witness saw no part of the bus strike plaintiff. This we disregard and proceed to test plaintiff's rights by the evidence and reasonable inferences therefrom, favorable to her, most of which has heretofore been quoted *verbatim.*

██ ██ In order to establish a cause of action, plaintiff must prove that the actions of defendant's bus driver constituted negligence towards her, and that his negligent actions were the legal, or proximate, cause of her injury. Liability does not rest in the negligent act, but upon proof that the act of negligence was the proximate cause of the injury. Negligence is not a positive thing. It is to be found according to the circumstances of each case and must be determined in view of all the facts and conditions attendant at the time and place of the accident. *Pinckard v. Pease,* 115 Wash. 282, 197 Pac. 49; *Paddock v. Tone,* 25 Wn. (2d) 940, 172 P. (2d) 481. However, negligence upon the part of defendant's driver cannot be assumed because of the mere fact that an accident happened. *Sellman v. Hess,* 15 Wn. (2d) 310, 130 P. (2d) 688. It must be established by evidence or by legitimate inference from established facts.

██ Where the prospective passenger does not have the status of a passenger, the rule is that the carrier owes only the same duty to such person as it does to the public generally: namely, the duty of exercising ordinary care in the operation of its vehicles. Annotation, 7 A. L. R. (2d) 564. The company is not required to exercise the highest degree of care to ascertain whether or not a particular person walking or standing on a public street desires to become a pas-

senger. Ordinary care is all that is necessary in such a case. *Foster v. Seattle Electric Co.,* 35 Wash. 177, 76 Pac. 995. The court so instructed.

The plaintiff's complaint alleged three separate grounds of negligence. They were, under appropriate instructions to which no exceptions were taken, submitted to the jury, as follows:

(1) That the bus operator failed to observe the plaintiff in her attempt to get on the bus, when, in the exercise of reasonable care, he should have observed her.

(2) That the bus operator closed the bus doors immediately in front of the plaintiff, when in the exercise of reasonable care, he should have left the same open, permitting the plaintiff to enter the ·bus.

(3) That the bus operator started the bus abruptly disregarding the pedestrians and the traffic on the highway, so that as a consequence thereof the bus collided with the plaintiff, violently ·precipitating her to the ground and rendering her unconscious.

The defendant contends that there is no evidence or inference therefrom which warranted the jury in finding that any of these three charges was true.

It is our opinion that the issue raised by allegation (3) should not have been submitted to the jury. There is no evidence in the record that would enable a jury to find that the bus driver "started said bus abruptly, disregarding the pedestrians and the traffic on said highway."

The issues raised by allegations (1) and (2) are so closely interwoven that we discuss them together. The first alleges that there was negligence on the part of the bus driver, in that he did not see the plaintiff in her attempt to get on the bus; the second, that it was negligence to close the bus door immediately in front of the plaintiff.

There is nothing in the evidence, however, to show that the bus driver saw the plaintiff, or, in the exercise of reasonable care, could have seen her. *Woodman v. Seattle Electric Co.,* 42 Wash. 406, 85 Pac. 23. Plaintiff did not testify that she could, or did, see the driver. The evidence dis-

closed there was another woman two or three feet in front of her. She testified, "I walked angling to the bus door." It does not appear that she was in sight of the driver. To hold that the bus driver was negligent in not seeing her, we would have to assume that the driver *could have seen her*, an assumption which is negatived by plaintiff's own testimony. Such would not be an inference from any known fact, but would be clearly a mere speculation.

The bus door closed as plaintiff approached it. This gave her notice it was taking on no more passengers. The act of closing the door was not, of itself, an act of negligence unless, prior to closing, plaintiff could have been seen by the driver and had, by some act, indicated or communicated her intention to board the bus to the driver at a time when such could have been seen or could have been accomplished with safety. *Patterson v. Duke Power Co.*, 226 N. C. 22, 36 S. E. (2d) 713. There is, however, no evidence that plaintiff could have been seen by the bus driver, nor is there evidence that she in any manner communicated her desire to board to the driver at a time when such could have been accomplished with safety. Hence, closing the bus door was not negligence, under these circumstances, upon the part of the defendant.

Plaintiff has failed to produce any evidence of negligence on the part of defendant, either directly or by inference, based upon fact.

The cause is remanded, with directions to vacate the order granting a new trial and to dismiss the action.

SCHWELLENBACH, C. J., MALLERY, and DONWORTH, JJ., concur.

HILL, J. (concurring in the result)—I concur in the result. The plaintiffs (respondents) are in this dilemma: If Mrs. Evans was where she says she was, it seems to me that she should have been seen by the bus driver, and there was evidence from which negligence could be inferred, but if she was in that position it was physically impossible for her to have been hit by the side or the overhang of the bus. If she was hit by the bus it was because she was running along

side of it, as one witness suggested, and there was no way in which the driver could have seen her, hence no negligence. If there was negligence it was not the proximate cause of the injuries sustained.

FINLEY, J. (dissenting)—The majority think that the evidence was not sufficient to justify submission of this case to the jury, and that the trial court erred in granting a new trial. In effect, it is their view that the motion for judgment notwithstanding the verdict should have been granted by the trial court in the first instance. This is based upon the majority's particular evaluation of the evidence assertedly most favorable to the plaintiff. They remand and order the case dismissed.

I agree substantially with the majority's statement of the facts and their resume of the evidence. But when it comes to their evaluation of the facts and the evidence, I must part company abruptly.

The majority very properly point out that in considering a motion for judgment notwithstanding the verdict, all competent evidence favorable to a plaintiff must be considered; furthermore, that if such evidence cannot be characterized as substantial, the case should not be submitted to the jury. It is also suggested that we no longer follow the "scintilla of evidence" rule in this jurisdiction. I agree that these are recognized and accepted statements of the law. A "scintilla of evidence," or that other legal standard, "substantial evidence," currently used for calculating or determining whether a plaintiff's case should be submitted to a jury, cannot be related too accurately to prosaic ounces or pounds, inches or feet, or other units of recognized, precise, scientific measurement. Consequently, when we speak in terms of either weighing or measuring the evidence, the problem presented is a difficult one. The methodology involved might be described as an intellectual process involving somewhat elusive or nebulous hypotheses or standards. However, the inherent or basic question to be determined is quite simple. It is whether, as a practical matter, we think a plaintiff's evidentiary story seems sufficiently persuasive

or convincing to entitle him to have a jury listen and decide whether to believe him or his adversary.

In the case at bar, an evaluation of the facts and the evidence most favorable to the plaintiff points to a consideration of two propositions: (1) Whether such evidence shows that Mrs. Evans, the plaintiff, was standing in the bus loading zone at a point where she could or should have been seen by the bus driver; and (2) Whether it can be said, from such evidence, that Mrs. Evans was struck by the bus.

After stating that the carrier owes to patrons the "duty of exercising ordinary care in the operation of its vehicles," the majority conclude that "There is nothing in the evidence, however, to show that the bus driver saw the plaintiff, or, in the exercise of reasonable care, could have seen her." My evaluation of the evidence most favorable to the plaintiff points positively to a contrary result. Mrs. Evans testified that she was in front of the Star Clothing Store, on the corner of Second Street and Yakima Avenue; that she noticed the bus approaching; that she looked up to see which bus it was, and that it happened to be the one for which she was waiting. Other testimony in the record shows that identification of bus routes is carried only on the front end of the buses. Mrs. Evans testified positively that she saw that the particular bus was the one she intended to board; that is, the "Fairview" bus. If this fact was determined by her as she saw the bus approaching, it must be concluded from this testimony that at some time she was at a point in front of the approaching bus. As already mentioned, she positively testified that she was standing in front of the Star Clothing Store. This latter testimony would place her somewhere in, or at least closely adjacent to the loading zone. On cross-examination she was asked, in effect, whether she walked over and took a look at the front of the bus. The purpose of the question is not clear to me but apparently the thought of defense counsel here was to show that after the bus stopped, Mrs. Evans walked to the front end of the zone and looked at the bus sign. Whether Mrs. Evans was in a position in the loading zone

where she could see the front of the bus as it approached, or whether she subsequently walked toward the front end of the zone and looked at the sign on the bus, she was in front of the bus at a point in the loading zone *at some time while the bus was stopping or had stopped to take on passengers.* Under either view of the matter, the bus driver could or should have seen her in the exercise of ordinary care for the safety of patrons of the bus company; or, at least, it might be said the question was one for the jury.

At one point upon cross-examination, Mrs. Evans testified that she did not know what hit her; but on direct examination she had stated positively that the bus struck her and that she remembered nothing thereafter.

The foregoing evaluation of the evidence most favorable to the plaintiff convinces me that there was substantial evidence to support her claim of negligence on the part of the bus company (hereinafter referred to as appellant), that questions were presented which should have been passed upon exclusively by the jury, and that the trial court acted quite properly in submitting the case to the jury.

One of appellant's contentions is that physical facts negative Mrs. Evans' claim that the bus driver was negligent. Appellant's vice-president and superintendent testified relative to the physical dimensions of the bus involved in this case and its method of operation. This testimony tended to prove that as a bus pulls away from a loading zone, the back end projecting as it does behind the rear wheels moves about four or five inches beyond the arc described by the right rear wheel of the bus, and toward the curb; but, because of the forward motion of the bus and because the bus must turn out into traffic, should a person stand motionless in the loading zone at the loading point opposite the front door of the bus while it pulls out into the stream of traffic, the rear end of the bus would be about three or four feet away from the person at the time it passed the loading point. *Mandel v. Washington Water Power Co.,* 83 Wash. 19, 144 Pac. 921; and *DeTemple v. Schafer Bros. Logging Co.,* 169 Wash. 102, 13 P. (2d) 446, hold that physical facts which

are undisputed and speak the truth with unerring certainty, must control. But, as pointed out in the instant case by the trial judge when he passed on this specific question,

"How far the rear would swing toward the curb and in what location in the loading zone the maximum of the swing would occur, were matters for the jury to determine, taking into consideration the manner of the operation of the bus, the sharpness of the left turn made, and the proximity of the bus to the curb when that turn was begun."

These and other variable factors in the operation of a motor-bus convince me that this contention of appellant is without merit under the facts in this case.

Appellant's assignment of error No. 4 reads:

"The court erred in refusing to receive the first verdict of the jury for defendant and in refusing to enter judgment thereon."

Apparently, at the conclusion of the trial, the jury first returned a verdict which read:

"We, the Jury in the above entitled cause, find for the Defendant By Instruction # 8 YAKIMA VALLEY TRANSPORTATION Co., INC., A Corporation,"

Thereupon, the trial judge, after reading this verdict, asked counsel for the parties to approach the bench. Counsel for Ila Marie Evans objected to the receipt of this verdict on the ground that the verdict appeared to be based exclusively on instruction No. 8, which related to contributory negligence. The trial judge then refused to receive that verdict. He next instructed the jury that it was not necessary for their written verdict to refer to any particular instruction; that in arriving at their verdict, they should consider all of the instructions. New blank forms for a written verdict were given to the jury. The jurors retired for further deliberation. Approximately one-half hour passed. At the request of the appellant, the jury was brought back into the courtroom and the trial judge repeated his former statement as to their considering all of the instructions. He further stated that he wished to be careful that nothing he said would be taken by the jury as an indication that he was directing their verdict in any

manner. Approximately three hours after this incident in open court, the jury returned with a second written verdict, which the trial judge received. This second written verdict read as follows:

"We, the Jury in the above entitled cause, find for the Plaintiffs, Nathan Evans and Ila Marie Evans, husband and wife, and assess the amount of recovery in the sum of Seven Hundred and Fifty Dollars ($750.00)."

Appellant contends that the trial judge erred in not receiving the first verdict. It is appellant's contention that the words, "By Instruction # 8," should have been regarded merely as surplusage. *Rowe v. Safeway Stores,* 14 Wn. (2d) 363, 128 P. (2d) 293, is cited as controlling. Admitting that the trial judge could have treated the words, "By Instruction # 8," as surplusage, nevertheless, it was not necessary that he do so. Rem. Rev. Stat., § 360 [P.P.C. § 99-69], provides:

"If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may again be sent out."

In *Bino v. Veenhuizen,* 141 Wash. 18, 20, 250 Pac. 450, 49 A. L. R. 1297, we have commented pertinently upon the above statute and the policy inherent therein as follows:

"Reading the above quoted section, it is apparent that the court is authorized by statute to send the jury out for further deliberation in cases where the verdict is informal or defective. The law does not require that this be done, but authorizes it, if in the judgment of the court it should be done.

"The purpose of the law is apparent. All too often questions arise upon the true construction of verdicts,—even those that are only informal and defective,—and appeals result. It is to the interest of clients, counsel and the courts to have verdicts returned in such form as to obviate perplexing questions arising therefrom. The trial court, out of an abundance of caution, desired to have the verdict in proper form. His action, therefore, should be commended rather than frowned upon."

Without further elaboration, I conclude that the trial judge acted properly regarding the first written verdict, which he considered informal or defective.

Attention will now be given to appellant's contention that the trial judge abused his discretion in granting Mrs. Evans a new trial. If, as appellant contends, a new trial was granted because of inadequate damages awarded to Mrs. Evans by the jury, the order of the trial judge should not be reversed on this particular point. Without setting forth Mrs. Evans' injuries in detail, it can certainly be noted that the record amply supports the order of the trial judge in this respect.

For the reasons set forth above, it appears to me that the order appealed from should be affirmed in all respects.

GRADY, J. (dissenting)—I am in accord with the views expressed by the trial judge. It appears to me the evidence and reasonable inferences to be drawn therefrom made a case for the jury, but in view of the conflicting verdicts I believe the only way out of the dilemma is to grant a new trial.

HAMLEY, J., concurs with GRADY, J.

---

March 20, 1952. Petition for rehearing denied.