[No. 33735. Department One. August 15, 1957.]

PAUL BECKER et al., *Respondents*, v. TACOMA TRANSIT COMPANY, *Appellant*.[1]

[1] Reported in 314 P. (2d) 638.

*Carlson, Newlands & Reha* and *C. John Newlands,* for appellant.

*Goodwin, Hicks, Malanca & Hager,* for respondents.

FINLEY, J.—This action was commenced to recover damages for wrongful death. Cynthia Becker, the deceased five-year-old child of plaintiffs, died as a result of personal injuries allegedly caused by the negligent operation of a bus owned and operated by the defendant. The defendant's answer denied the allegations of negligence and affirmatively alleged contributory negligence on the part of the plaintiff mother. The affirmative matters in the answer were denied by plaintiffs' reply. On the issues thus framed, a jury returned a verdict of $5,700 for the plaintiffs. Defendant moved for judgment n.o.v., or in the alternative for a new trial, upon the grounds that there was no evidence or reasonable inference from the evidence to justify the verdict of the jury; and for errors in law occurring at the trial.

Both motions were denied, and defendant appeals.

On the day in question, Cynthia was in the custody of her mother. Therefore, we shall hereafter refer to the plaintiff mother as if she was the sole respondent.

As to appellant's contentions that there was no evidence, or reasonable inferences therefrom, to support the verdict, we must be guided by three well established rules, as follows:

" '[1] A verdict will not be set aside unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to support the verdict. [2] The evidence must be viewed in the light most favorable to the party against whom the motion is made. All competent evidence favorable to the party who obtained the verdict must be taken as true, and that party must be given the benefit of every favorable inference which reasonably may be drawn from the evidence. [3] If there is

substantial evidence to support the verdict, it must stand. Substantial evidence is that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed.' *Arnold v. Sanstol,* 43 Wn. (2d) 94, 260 P. (2d) 327, citing *Rettinger v. Bresnahan,* 42 Wn. (2d) 631, 257 P. (2d) 633." *Mason v. Turner,* 48 Wn. (2d) 145, 291 P. (2d) 1023.

If we keep in mind the above rules, it is apparent that the record supports the following factual pattern.

The regular route of the appellant's bus from downtown Tacoma is *westward* on Sixth avenue to Walters road. There the bus turns *southward* and proceeds on Walters road to south Nineteenth street, where a "T" intersection is formed by the two streets. There is a *stop* sign and a *bus stop* on the northwest corner of this intersection. Normally, after stopping at this intersection of Walters road and south Nineteenth street, the bus turns to the right and proceeds west on south Nineteenth street to the end of the run. It then turns around and proceeds east on south Nineteenth street, returning to the "T" intersection at Walters road, where it may stop to pick up passengers at a *bus stop* on the south side of south Nineteenth street, opposite Walters road. From there the bus continues east on south Nineteenth street to its point of departure.

On November 8, 1954, the city of Tacoma was repairing Sixth avenue and had blocked that street. Consequently, appellant's bus was rerouted from downtown Tacoma to a point on south Nineteenth street some distance east of the "T" intersection with Walters road, at which point the bus turned right and proceeded west to the "T" intersection at Walters road. There, proceeding in a direction *the reverse of its customary route,* the bus turned *right* on to Walters road and continued *north* to Sixth avenue. It there turned around, proceeded south on Walters road in its customary direction to the "T" intersection, and then completed its regular run back to downtown Tacoma via south Nineteenth street, as described above.

There were no curbs or sidewalks at or near the "T" intersection, described above. There was a gravel shoulder

along the two streets. The shoulder sloped to a ditch, along side of which there was a bank, bordered by the lawns of the abutting property owners.

The house in which Cynthia lived with her parents was on the north side of south Nineteenth street, located on the second lot, approximately one hundred feet east of the "T" intersection. Cynthia was attending kindergarten and, normally, left the house and boarded the bus at one of the two described *bus stops* at about midday.

On November 8, 1954, Cynthia was accompanied from the house by respondent at approximately noon. It was raining. Respondent testified that she intended to escort her daughter to the *bus stop*. On direct examination, respondent stated that when she crossed the front lawn appellant's bus was approaching and proceeding west on south Nineteenth street on its rerouted run; that she proceeded to the edge of south Nineteenth street, accompanied by Cynthia, as the bus passed; that it appeared that the bus was stopping at the "T" intersection; that the bus did stop, after proceeding about half way around the corner onto Walters road; that when respondent looked back to the house at her younger child, Cynthia commenced to run down the right gravel shoulder of south Nineteenth street toward the bus; that when respondent looked back toward the bus, Cynthia was running along the side of it toward the open doors at the front thereof; that a man (Rudolph Vlastelica) had come across the street from the bus stop on the northwest corner of the intersection and was boarding the bus. As to Cynthia's position at the time, respondent testified, on direct examination, as follows:

"Q. As Cynthia approached the bus when it was stopped, what was her line of travel; which way did she go? A. She went along the gravel here (indicating),—and up here (indicating). Q. Now, Mrs. Becker, did you see another man come across—the man that you described with the sack on his back—come across the street to get on the bus? A. Well, I saw him come around the front of the bus and get on. Q. And get on? A. Yes. Q. At the time that the man that you described boarded the bus, where was Cynthia? A. Right at the end of the door of the back— Q. Of the front door? A.

Yes. Q. And he got on before her? A. Yes. Q. Was the bus stopped at that time? A. Yes. The bus stopped and he opened his doors and this man came around and he got on, and as soon as— Q. Just a moment. At the time that the man got on was Cynthia in the vicinity of the front door of the bus? A. Yes. Q. How close to the front door would you say? A. Oh, like about—I just—a little—right there, practically. Q. Then what happened? A. Then as soon as the man got on the doors closed and the bus started all at the same time. And she knocked on the door, rapping, and she ran a few steps and was knocking on the door, and then she turned toward the bus, this way (indicating),—and just fell. Q. Did she fall away from the bus? A. Yes. . . . Q. Mrs. Becker, about how far from the bus steps was Cynthia at the time that the doors closed? A. Oh, about (indicating). Q. You are showing with your hands, are you? A. About a foot, maybe."

Respondent called John A. Paulson as a witness, and he testified that he had stopped his automobile about twenty feet behind the bus from the position where it was stopped on the corner; that from the angle of his position, he had a good view of the doors of the bus. On direct examination, his testimony was as follows:

"Q. Now after the bus stopped at that point did anyone board the bus there, get on it? A. After the bus waited there for, oh, just a short time, probably a half a minute, why this man appeared and stepped on the bus. After the bus had pulled up there why it stood there for, say a half a minute, probably a little better, when I seen this man step up right ahead of the child and get on the bus. Q. You say 'right ahead of the child?' and get on the bus; you say '. . . right ahead of the child . . .?' A. That is right. Q. Was the child right behind the man when he got on? A. She was right up along side of the door when the man stepped in front of her. Q. Then what happened? A. Well, when the man got on, the bus started up and I realized then that there was going to be—might be a chance for that child to get hurt so I sounded the horn and— Q. Then what happened as far as the child was concerned? A. Well, as the bus started up the child turned to—facing east, and the fender of the front—front fender of the bus hit her on the shoulder —her right shoulder—and turned her around—spun her around—and when she hit the ground or pavement she was —her feet was facing, you might say southwest. Q. Were the

feet toward the bus or away from the bus? A. Towards the bus. Q. And her head was away from the bus? A. That is right. And she fell just in that position where, when the bus completed the turn, her body was right in line with the hind wheels. Q. Did the hind wheels pass over her body? A. Yes, sir."

On redirect examination, Mr. Paulson testified as follows:

"Q. Mr. Paulson, was the little girl opposite the front doors of the bus and at the doors of the bus before the bus started? A. That is right."

The bus driver testified that he did not see Cynthia. This fact, apparently, was conceded by respondents at the trial. However, the fact is uncontradicted that the bus driver closed the doors and started the bus in motion while Mr. Vlastelica was standing on the lower steps of the bus stairwell.

When the above testimony and the inferences to be derived therefrom are viewed most favorably to the respondents, we believe that there was substantial evidence to support the verdict of the jury.

The trial court's instruction No. 19 read as follows:

"You are instructed that the acts of closing the bus door and starting the bus were not, of themselves, acts of negligence by defendant unless, prior to closing the door, *the child could have been seen by the bus driver* and had, by some act, indicated or communicated her intention to board the bus to the driver at a time *when such could have been seen* or could have been accomplished with safety." (Italics ours.)

No exception was taken to instruction No. 19, and it became the law of the case. *Pearsall v. Paltas*, 48 Wn. (2d) 78, 291 P. (2d) 414. The language of the instruction was taken, almost word for word, from *Evans v. Yakima Valley Transp. Co.*, 39 Wn. (2d) 841, 239 P. (2d) 336 (citing *Patterson v. Duke Power Co.*, 226 N. C. 22, 36 S. E. (2d) 713), and it is a proper statement of the law.

Under the evidence and instructions, the jury was warranted in finding or inferring that Cynthia was in front of the door and was attempting to board the bus; that the

bus driver did not see her, because Mr. Vlastelica was standing in the doorway and obstructed the bus driver's view; that the bus driver closed the door in Cynthia's face, so to speak, and simultaneously put the bus in motion; that, since the bus was only about half way through its turn at the intersection, the resulting swing of the bus (caused by the tracking of the rear wheels on proceeding through the turn) brushed Cynthia to the pavement, where the rear wheels of the bus passed over her body; that these acts constituted negligence which was a proximate cause of the injuries, culminating almost instantly in Cynthia's death.

The evidence concerning appellant's negligence was clearly sufficient to justify submission of that issue to the jury.

Appellant relies upon the *Evans* case, *supra*; however, we think the facts clearly distinguish the instant case and the *Evans* case. In the *Evans* case, as the plaintiff was approaching a bus, the driver closed the doors and proceeded out of the bus zone. In some manner the plaintiff suffered personal injuries, allegedly caused by the negligence of the defendant's bus driver. In *Evans*, the majority of the court (three judges dissenting) stated: (a) there was *no evidence* that the plaintiff could have been seen by the bus driver; (b) there was no evidence that plaintiff in any manner communicated to the driver her desire to board the bus at a time when boarding the bus could have been accomplished with safety. From the foregoing, the majority concluded that there was insufficient evidence to support a finding by the jury that the defendant was negligent.

In the instant case, appellant's argument that respondent was guilty of contributory negligence, as a matter of law, in sending the child into a dangerous area is untenable. It is only in rare cases that the court is justified in withdrawing the issue of contributory negligence from the jury. *Berndt v. Pacific Transport Co.*, 38 Wn. (2d) 760, 231 P. (2d) 643; *McQuillan v. Seattle*, 10 Wash. 464, 38 Pac. 1119. The instant case is not of the type indicated. The testimony was conflicting, and reasonable minds could honestly differ.

Contributory negligence was a question for the jury. *Mc-Quillan v. Seattle, supra.*

If the jury found the facts to be substantially as indicated above—and we have no way of determining that the jury did not so find—it could have concluded that respondents' contributory negligence, if any, was not a proximate cause of the injury.

It is our judgment that the trial court did not err in submitting the issues of negligence and contributory negligence to the jury, nor in denying the motion for judgment n.o.v.

■ Error is assigned to instruction No. 23A, which, in part, specified that it was the duty of the bus driver, before he started the bus, to determine " . . . whether or not there was *any person standing by the door and attempting to board the said bus* that might be struck by the bus as it proceeded around the curve." (Italics ours.) Appellant contends that the italicized portion of the instruction constitutes error, because it is not supported or justified by the evidence. This argument is without merit, and it is not in accordance with our views of the evidence which we have discussed hereinabove.

■ Appellant argues for the first time, in its brief and in oral argument on appeal, that instruction No. 23A is slanted and misleading, because the words *standing by the door* could mean "somewhere alongside the bus," but not visible from the bus driver's seat, and, therefore, that the instruction is prejudicially erroneous. The exception to the instruction, as taken, related only to the sufficiency of the evidence and did not call the attention of the trial court to the objection as now made. Rule of Pleading, Practice and Procedure 10, 34A Wn. (2d) 75, seems to be pertinent. Since the exception was insufficient, the instruction became the law of the case. *Peterson v. King County,* 45 Wn. (2d) 860, 278 P. (2d) 774.

Appellant assigns error to the refusal of the trial court to give three requested instructions based upon an ordinance of the city of Tacoma which relates to the duty of a pedestrian proceeding upon a public highway. It is contended

that Cynthia violated this ordinance; that her acts of negligence are chargeable or imputed to respondents, because the latter had custody and control over Cynthia; that respondents were guilty of contributory negligence, as a matter of law, in allowing Cynthia to violate the ordinance; and that appellant was thus denied the right to have one of its theories of the case submitted to the jury.

The first of appellant's requested instructions read as follows:

"You are instructed that the traffic ordinance of the City of Tacoma reads as follows:

" 'Pedestrians on any public highway where a sidewalk is provided shall proceed upon such sidewalk. Pedestrians on any public highway where no sidewalk is provided shall proceed on the extreme left-hand side of the roadway and upon meeting an oncoming vehicle shall step to their left and clear of the roadway.' " [*cf.* RCW 46.60.290.]

Appellant did not request an instruction defining a *public highway* or *roadway*, as the words are used in the instruction and the code. See RCW 46.04.430 and RCW 500. A shoulder of a public highway is not a part of the *roadway*, and we have held that the above-quoted statute (RCW 46-.60.290) does not apply to a pedestrian walking on the shoulder where vehicles are forbidden to travel. *Highland v. Chas. H. Lilly Co.*, 175 Wash. 507, 27 P. (2d) 693, and cases cited therein.

There is testimony in the record which would allow the jury to infer that Cynthia proceeded at all times on the *shoulder* of south Nineteenth street; that she did not step onto the paved or improved portion of the highway until she approached the open doors at the front of the bus and was in a position where she could have been seen by the bus driver, if he had exercised reasonable care. Thus, Cynthia's acts would not have necessarily amounted to negligence *per se* on the part of the respondent in allowing her to so proceed, if she was on the shoulder of the roadway. *Bergstrom v. Ove*, 39 Wn. (2d) 78, 234 P. (2d) 548, and cases cited. That there was a conflict in the testimony, is of no avail to appellant.

The requested instruction, quoted above, would have, in effect, directed the jury to find that Cynthia was prohibited by law from approaching the bus from the right rear. The instruction implies that a pedestrian must proceed upon the left side of a public highway if there is no sidewalk. It does not distinguish between proceeding upon the *right shoulder* and proceeding upon the paved or improved portion of the street.

It is our view that the requested instructions were not complete and correct statements of the law, and therefore, the trial court did not commit error in refusing to give them. *Brewer v. Berner*, 15 Wn. (2d) 644, 131 P. (2d) 940; *State v. Nyland*, 47 Wn. (2d) 240, 287 P. (2d) 345.

Appellant's remaining assignments of error have been either expressly waived, or are directed to its requested instructions which were refused by the trial court and which we find are adequately covered by the instructions given to which no error is assigned.

We find no error in this proceeding. The judgment of the trial court is affirmed.

HILL, C. J., MALLERY, ROSELLINI, and OTT, JJ., concur.